S. T. CRAWFORD. *et al.*, plaintiffs in error, *vs.* E. H. Ross and E. Ross, defendants in error.

1. The revocation of an order appointing a Receiver is a matter which may be heard and acted upon by the Judge, on the usual notice, in vacation.

2. The extraordinary writs and remedies granted by the Chancellor, before a trial on the merits, ought not to be granted without caution, and unless there is immediate danger to the rights of the complainant, if they be denied, and if the Court becomes satisfied that the danger does not exist, it is his duty, on proper notice, to discharge them.

3. In this case, the Court did not err in dissolving the injunction and vacating the order appointing a Receiver.

4. It is the duty of the Judge, if he is satisfied there is a *bona fide* intention to except to his judgment, so to mould his order as that the excepting party may have a reasonable time to file his bill of exceptions and obtain a *supercedeas* before the *status* of the case can be materially changed.

Equity practice. Receivers. Injunctions. *Supersedeas.* Decided by Judge CLARK. Lee county. Chambers. January, 1869.

Crawford *et al.*, *vs.* Ross and Ross.

Shadrack T. Crawford, in his own behalf, and as *prochien ami* of Charles Roberts, a minor, A. J. Williams and James McGarrah, filed their bill in equity against E. H. Ross and his wife, making the following averments : On the 17th of September, 1864, said E. H. Ross was appointed guardian of said minor, and gave his bond, as such guardian, with said adult complainants as his securities thereon. Ross, as guardian, took possession of the money and effects of the minor, and invested them in three hundred and twenty-five acres of land, in the seventeenth district of Sumter county, worth $1,000 00, taking the title to himself. Said guardian rented said land to James W. Ross, for one-fourth of the cotton and one-third of the grain to be raised thereon, during 1868. He has received ten bales of cotton, worth $1,100, and shipped them to Jones, Reynolds & Adams, Macon, Georgia. This guardian owes the minor $2,800 00, for cash received for him, as his ward. He is insolvent, and has been, by the Ordinary, discharged from his guardianship, because of mismanagement of the minor's estate. They claimed that, in equity, said land and cotton belong to the minor. Therefore, they prayed that the guardian be compelled to convey the land to the minor, and to deliver him the cotton, and that he be enjoined from disposing of either. And as these securities are liable for said waste, they prayed that a Receiver should be appointed, who should take possession of the land and cotton, and other effects of the minor, etc.

The Chancellor granted the injunction and appointed a Receiver, who took possession of said property.

The bill was amended by adding the following averments : On the 8th February, 1868, said guardian gave to two of said adult complainants, a mortgage to indemnify them as his said securities, and to protect said minor. Said mortgage including a note on James F. Ross, dated and due on the 25th of December, 1867, for $511 97, and another on J. D. Cox for $50 00, due 25th December, 1868, and his said interest in the cotton and corn raised on said farm, specified as follows : " The same being one-fourth of the cotton and one-third of all the grain to be raised on the plantation of

the said James F. and E. H. Ross, in the county first afore-said, to be raised in the year 1868." Said rent amounted to twelve bales of cotton, ten of which Adams, Jones & Rey-nolds, warehousemen of Macon, Georgia, have, and the other two are in the warehouse of Harrold, Johnson & Co., Amer-icus, Georgia, and 500 bushels of corn are still on the planta-tion. It was understood, when the mortgage was made, that said rent should be subject to the claim of said adult com-plainants, and be held by James F. Ross, and it should be applied to the payment of the minor's claim. The guardian had shipped this cotton, to dispose of it, and convert the assets to his own use, before they had opportunity to foreclose the mortgage, or take other steps to secure themselves. James F. Ross refused to deliver a part of said corn when they ordered him to do so. Said guardian, with a view to defeat his creditors, in 1868, conveyed his residence in Smith-ville, Georgia, worth $2,000 00, to his wife, and he has given liens on said crop. They prayed, additionally, that James F. Ross and Mrs. Elizabeth Ross be enjoined from disposing of any of said property held by them respectively, and that the Receiver should take charge of said notes and the half interest in said plantation, etc.

The defendant, E. H. Ross, demurred to the bill and amendment, for want of proper parties, and for a misjoinder of parties; "for that said ward being above the age of four-teen years, comes into Court and selects the defendant as his guardean, *ad litem* and *prochien ami*," and the defendant tenders such bond as the Court would require, and because the adult complainants are only securities, and can have no relief in a Court of Equity."

At the same time, he filed his answer, stating that he received $32,623 50, Confederate currency, for the minor, on the 17th of September, 1864, and invested it in one-half of said land, and took the title to himself, as guardian of said ward, and afterwards, in March, 1866, he bought the other half of the plantation for himself. He said he tried to get an order of Court for this investment; but not being able to communicate with the Judge of the Superior Court, he made

Crawford *et al.*, *vs.* Ross and Ross.

the investment without order, upon the advice of the Ordinary. He paid for this half interest for the minor, 10th of August, 1865, $35,000 00, of which $19,026 57 was the minor's, and the balance was his own. The minor's slaves were emancipated.

He filed, with his answer, a copy of his returns, as such guardian, admitted that there was a balance of $789 15, against him, and that said half interest in the land and in said crop, was the minor's. He denied positively the charges of fraud, mismanagement and insolvency.

Upon the filing of this demurrer and answer, E. H. Ross moved to dissolve said injunction, and to vacate the order appointing the Receiver. Pending argument, complainant's solicitors moved to appoint a guardian *ad litem*, for said minor. The Court refused to do·so. He discharged the Receiver, and ordered the property delivered back to E. H. Ross, and ordered the injunction to be dissolved, upon E. H. Ross filing a bond of $1,000 00, to indemnify the complainants, and to perform the decree in this cause, and ordered that $100 00 be paid to defendant's solicitors, defendant consenting to it. Complainant's solicitors asked the Chancellor to pass an order superceding his judgment till it could· be reviewed here, but he refused to do so. Thereupon, complainant's solicitors assigned as error the refusal to appoint the guardian *ad litem*, the removal of the Receiver, the redelivering of the property, and the dissolution of the injunction, his order as to counsel fees, and the refusal of the *supercedeas*.

S. H. HAWKINS, for plaintiff in error, said that the appointment of Receiver and the injunction were proper and necessary, citing Code, secs. 3149, 265, 3043; *Rutherford vs. Jones*, 14 Ga. R., 522; *Jones et al., vs. Holliday*, 37 Ga. R., 569; Edw. on Receivers, 336; Williams *et al., vs.* Gilbert, 11 Ga. R., 595. The Chancellor had no power to remove Receiver in Chambers at that time: Waters vs. Jones, 1 Kelly, Ga. R., 303. The Receiver was entitled to notice: Dougherty *et al., vs.* Jones, 37 Ga. R., 348. The Chancellor

could and ought to have secured the mortagees: Downing *et al.*, *vs.* Palmer, 1 Munroe, 65; Code, sec. 3137; Martin & Yates vs. Tidwell, 36 Ga. R., 332. *Supercedeas* should have been granted: Lindsay vs. Lindsay, 14 Ga. R., 657; Holcombe *vs.* Roberts, 19 Ga., R., 588, etc.

W. A. HAWKINS, G. M. WARWICK, for defendants.

McCAY, J.

1. The appointment and discharge of Receivers, as well as the passing of other orders in Chancery, the object of which is to protect the property, or to preserve things in *statu quo*, until a regular hearing can be had, are, in their nature, such powers, as to be of any practical use, must be exercised in vacation, by the Chancellor, and for this and the like purposes, a Court of Chancery is always open: Code, 3043, 4163. Such always has been the practice in this State. In these cases, the action of the Chancellor is only to keep things in *statu quo*, and his decision is not.final. The same public policy, which makes it proper to take action in such cases on an emergency, also requires that it should be in the power of the Chancellor, on motion and notice, to undo and vacate.

Nor was the Act of March 16th, 1869, so far as it applies to Receivers, at all necessary. It is true, the passage of such an act implies that the Legislature so thought. But if the law were, in fact, so before, the passage of the Act of March 16th, 1869, could not alter the truth of the case. It is not in the power of the Legislature, under our system, to enact, in any way, that the law was so and so at any past time: Constitution, art. 1, sec. 31.

Nor was this the intent of the Act referred to. It was passed to make clear, for the future, what some persoms thought doubtful; that is all. *We* have no doubt as to the law before the Act was passed, and, so far as it applies to the discharge or alteration of orders appointing Receivers, we think it but an affirmance of the law as it has long been in this State.

2. and 3. The exercise of the extraordinary powers granted

Crawford *et al., vs.* Ross and Ross.

to the Chancellor, of injunction, *ne exeat*, appointment of Receivers, etc., is a very delicate and responsible duty. It is a serious interference, without the verdict of a jury, and without a regular hearing, with the *prima facie* rights of the citizen, and ought only to be granted to prevent manifest wrong.

When a hearing is had of the other side, which the law grants as a matter of right, it is in the discretion of the Judge, to revoke or modify his order, and it will take a strong case to induce this Court to interfere to reverse his judgment. The statute confers this right, and imposes this duty on the Circuit Judge. We have no power to interfere, unless his judgment is so manifestly wrong as to be *illegal.* This Court is not a Court of Appeal, but a Court of Errors. Its functions are not to review matters confided to the Circuit Judges, and exercise our judgment in the premises; but to correct the *errors* of *law* they may commit. In matters left, by law, in his *discretion,* although we might, perhaps have, made, the facts, a different judgment, this Court will not reverse the Judge, unless his judgment be an error of law; or, if the case be one turning only on facts, unless his discretion has been manifestly hasty, and an abuse of that wise deliberation proper in a judicial officer.

We think, in this case, that the Judge might well, under the answer, have done as he did. From all the facts, it appears that, on the whole, this defendant has done very well by his wards, and that there is very little danger of any loss.

The high prerogative act of taking property out of the hands of one, and putting it in pound, under the order of a Judge, ought not to be taken, except to prevent manifest wrong, imminently impending. And when the Judge, on the coming in of the answer, finds that the danger is not imminent, and that there was no pressing necessity for the order, it is very proper for him to revoke or modify the order on such terms as he thinks wise. We think, in this case, he has not abused that discretion and judgment which the law has confided to him.

4. We would, however, suggest that, if the case is one of
VOL. XXXIX—4.

doubt, or if the interest is important, and the Judge is satisfied that the complainant desires to file a bill of exceptions, he ought to give a reasonable time, so that the parties may be kept in *statu quo,*

We are, however, not disposed to lay down any rule. These matters are, as the law now stands, in the wise discretion of the Chancellor, and it is only in the abuse of that discretion in matters of fact, that this Court gets jurisdiction.

Judgment affirmed.