## LATHAM *v.* CHAFEE.

*(Circuit Court, D. Rhode Island.* May 23, 1881.)

1. REMOVAL OF TRUSTEE—MISMANAGEMENT—FRAUD—INJUNCTION—RE-
CEIVER.

    In a suit for the removal of a trustee, a court of equity will not summarily interfere, before answer filed, by the granting of a preliminary injunction and the appointment of a receiver, upon charges of fraud and bad business management, unless such charges are clearly established, and the peculiar circumstances of the case imperatively demand the relief sought.—[ED.

In Equity. Motion for a preliminary injunction and the appointment of a receiver.

*Jerome B. Kimball, Andrew J. Patten, Benj. F. Butler,* and *Roger Prior,* for complainant.

*C. Frank Parkhurst, Jas. Tillinghast, Benj. F. Thurston,* and *Chas. Hart,* for defendant.

COLT, D. J. The bill under which this motion arises is for the removal of a trustee. It does not ask that the property may be sold or distributed, and only for such an account as would be rendered necessary by a removal. Upon the face of the papers it appears that this property has remained in the possession of the trustee for more than seven years, though no complaint of delay is made in the bill, and there is no prayer to hasten the final discharge of the trust. We are judically informed that a recent decision has removed grave obstacles in the way of giving title to the estates held by the trustee, and it is to be hoped that nothing in this proceeding will be allowed to interfere with a disposition of said estates in accordance with the trusts under which they are held.    .

The immediate and only question now before us is not whether, upon a full hearing after answer filed, the defendant shall be removed as trustee, but whether, *at this stage of the proceedings,* such a case has been made out as calls for the summary interference of the court by way of a preliminary injunction and the appointment of a receiver. The merits of this controversy, as they may be developed upon a

full hearing and proper proof, are not now under consideration; but only the question whether such an emergency exists, as shown by the bill and affidavits, as warrants the court, through the exercise of its extraordinary powers of injunction and receivership, in taking this vast property from the possession of the defendant and into its own custody, during the time that may elapse before a final hearing can be had upon the merits. Whether the defendant shall be removed as trustee is one thing to be determined at the proper time, and upon proper proof; but whether a receiver shall be appointed *pendente lite* is quite a different thing, to be decided by considerations which may involve in a slight degree the other and principal question raised by this suit.

The main object of both an interlocutory injunction and a receiver is to preserve the subject-matter in controversy until the rights of the parties are determined. High on Rec. 476. They are invoked for the prevention of future injuries, rather than for the redress of grievances already committed. They are prospective rather than retrospective in their operation. Id. If there are past wrongs to redress, or rights to be determined, the proceedings are to be conducted in the regular way, by answer and proof. It is the immediate danger to the fund in the immediate future or pending litigation that justifies the court in resorting, before a final hearing, to these summary measures.

In the appointment of a receiver *pendente lite* the court acts with extreme caution, and only under such peculiar circumstances as demand summary relief. High on Receivers, § 3, says:

"The exercise of the extraordinary power of a chancellor in appointing receivers, as in granting writs of injunction or *ne exeat*, is an exceedingly delicate and responsible duty, to be discharged by the court with the utmost caution, and only under such special or peculiar circumstances as demand summary relief; * * * and, because it divests the owner of property of its possession before a final hearing, it is regarded as a severe remedy, not to be adopted save in a strong case, and *never unless plaintiff would otherwise be in danger of suffering irreparable loss.*"

In *Crawford* v. *Ross,* 39 Ga. 44, the court uses this language:

"The high prerogative act of taking property out of the hands of one and putting it in pound, under the order of a judge, ought not to be taken, except to prevent manifest wrong immediately pending."

While the application for a receiver is said to be addressed to the sound discretion of the court, yet it is a discretion regulated by legal principles. *Lenox* v. *Notrebe*, Hamp. 225.

In *Clarke* v. *Ridgely*, 1 Md. Ch. 70, the chancellor observes:

"Indeed, it is believed the authority and duty of the court to appoint or not appoint a receiver depends upon the question whether the property is or is not in danger in the hands of the party who may at the time be in possession."

And in *Orphan Asylum* v. *McCartie*, 1 Hopk. Ch. 435, it is said:

"A receiver is proper if the fund is in danger, and the principle reconciles the cases found in the books."

We are asked, in the case before us, to appoint a receiver before answer, and where the property is in the hands of a trustee under an active trust. With regard to appointing receivers before answer, it is laid down, in High on Receivers, § 106, as follows:

"While the practice of appointing receivers before answer, in cases of emergency, is thus shown to be well established and generally followed by courts of equity in this country, yet the grounds which will induce the court to interfere, at this stage of a cause, must be very strong, and there must be clear proof of *fraud*, or of immediate danger to the property, unless it is taken into the custody of the court."

Says the court, in *Whitehead* v. *Worten*, 43 Miss. 523:

"If the application is made before the merits of the cause are disclosed, as before a *pro confesso* or answer filed, there must be strong grounds laid. * * * There must be strong and special reasons for the appointment before answer, as on proof of fraud by affidavits or immediate danger to the property unless at once taken in charge by the court."

And, again, in *Baker* v. *Backus*, 32 Ill. 115:

"A receiver is not usually appointed unless fraud is clearly proved by affidavit, or when it is shown that imminent danger would ensue if the property is not taken under the care of the court before an answer is put in."

Again, it is with extreme reluctance that courts interfere in the case of an express trust, either by way of injunction or receiver.

"Nothing but a case of pressing necessity and imminent probability of great danger from delay, will justify a court of equity in divesting a trustee of his trust until he has had an opportunity of answering." High on Injunction, § 14. "It may properly be observed in the outset that courts are averse to the displacement by a receiver of a trustee under an express trust unless for good cause shown. Upon a bill filed by the *cestui que trust* against a testamentary trustee, seeking an account of his trust, and a receiver to take charge of the property *ad interim,* the only ground for relief which the court will consider is whether the trust estate is likely to be wasted before the termination of the litigation; and when this is not shown, the alleged bad habits of the trustee, and his unfitness to execute the trust devolved upon him by the testator's will, are not sufficient to warrant a court of equity in the exercise of its extraordinary powers by the appointment of a receiver." High on Receivers, §§ 693, 695.

In *Orphan Asylum* v. *McCarter,* 1 Hopk. Ch. 429, it was held that where a trustee had mingled the trust fund with his own private funds it was not sufficient ground for the appointment of a receiver, it not being shown that the fund was in danger.

A careful examination of the authorities, we believe, will show that it is the impending danger to the trust fund which induces the court to interpose with these extraordinary remedies in the case of an express trust, where a trustee has failed to take possession of the trust property, and has allowed it to remain in the hands of the debtor, who may dispose of it at any moment, or where he is about to part with it in a fraudulent manner, so that it will be lost to the trust estate, or where the trustee is clearly proven to have been guilty of acts of fraud, so that the fund is not safe in his hands for any length of time. There are cases where the protection of the property may call for these summary remedies.

In *Jones* v. *Dougherty,* 10 Ga. 273, 288, cited by the complainant's counsel as parallel to the case under consideration, the trustees had never taken possession of the trust property, but had allowed it to be used and disposed of by the debtor, the administrator of the debtor being also about to sell a portion of the estate in another state. The court observe:

"And do not the allegations in the bill establish conclusively that the trust fund was in the most imminent danger of being entirely wasted or placed beyond the reach of the *cestui que trust?* * * * He allowed the assignor, from the time of the execution of the deed to the period of

his death, to keep the property in his own possession, and to appropriate the same to his own use, as if the deed had never been made, and even to sell and otherwise dispose thereof at his pleasure; and that since the death of the debtor the trustee has suffered his widow and other persons to retain said trust property, and to receive and appropriate the rents, issues, and profits accruing therefrom, the annual income of which is worth some $8,000; * * * that the administrator of the assignor in Alabama is proceeding to dispose of so much of the trust property as is situated in that state, and thus impair its validity by creating conflicting titles thereto. It is apparent that here the trust property was in great peril unless action was taken at once."

In the light of the foregoing authorities we come to the special consideration of the case before us. The defendant, Chafee, has been in possession of the property and administering this trust for a period of over seven years. He was appointed trustee at the request of the assignors, and with the assent of a large majority of the creditors, as shown by their acceptance of the trust notes. The court is now asked, upon a bill filed by one creditor, before answer and a hearing upon the merits, to enjoin the defendant from further managing the estate, and to deprive him at once of its possession. If there is not great danger that the complainant will suffer irreparable loss by any delay, it would seem better, in a cause of such magnitude, and where the interests of so many are affected, to proceed to a full hearing upon the merits before calling into action these extraordinary remedies, which might possibly work great injury.

An examination of the facts as disclosed in the affidavits do not in our opinion show such an impending danger to the fund as will justify the court in granting this motion. The charges against the defendant relate largely to the sale at a sacrifice of a portion of the trust estate, the purchase of supplies for the mills, especially cotton, at a high price, and the sale of the products at a low price. No fraud is here charged, but rather bad business management, which the defendant denies. As to the alleged purchase by the defendant, as treasurer, of the stock of the Sindnick Company, it can hardly be said to apply to the matter now before us. Whatever bearing all these and other like charges may have, at a hearing upon the merits, for the purpose of this motion it is not

necessary to consider them further. As to any specific charges in the nature of fraud, (except the purchase of the trust notes,) it may be said, in the present condition of the proof, being affirmed on the one side and denied on the other, that they are not sufficiently established to warrant the granting of this motion upon that ground.

With respect to the purchase of the trust notes, we are of the opinion that the trustee should be enjoined from any purchase or sale of the same until the further order of this court. The motion is therefore denied, except in the above particular, and a decree may be entered accordingly.