L. W. CLARK, Appellee, v. LUCIUS H. R. RAYMOND
*et al.*, Appellants.

1. **Fraudulent Conveyances:** PREFERENCES: INTENT TO HINDER
AND DELAY SHARED BY GRANTEE.  Where bills of sale and a quitclaim
deed made by an insolvent debtor to his son were executed and.
accepted for the purpose of preferring the son as a creditor, and with
the mutual intent to hinder and delay other creditors of the
grantor, and the value of the property transferred was largely in
excess of the grantor's indebtedness to his son, *held,* that the conveyances were fraudulent as to creditors.

2. ——: ——: ——: VALID AS TO EXEMPT PROPERTY.  To the
extent that the property so transferred is exempt from execution, however, such conveyances are valid.

3. **Receivers:** GROUNDS FOR APPOINTMENT OF: ATTACHMENT OF LANDS.
The attachment of lands which have been fraudently conveyed by an
insolvent debtor, and the garnishment of the tenants in possession,
will not entitle the attaching creditor to the appointment of receiver
of such lands, and of the rents and profits thereof, even after judgment, especially where it is not shown that the fraudulent grantee is
insolvent.

*Appeal from Harrison District Court.*—HON. GEORGE W.
WAKEFIELD, Judge.

TUESDAY, OCTOBER 25, 1892.

ACTION in equity to set aside certain conveyances
of real estate, and for the appointment of a receiver.
From a decree in favor of the plaintiff the defendants
Lucius H. R. Raymond and Rebecca Raymond
appeal.—*Reversed.*

*S. H. Cochran,* for appellants.

*H. H. Roadifer* and *J. W. Barnhart,* for appellee.

ROBINSON, C. J.—The petition alleges that on or
about the first day of December, 1883, defendant J. M.

Raymond made and delivered to the plaintiff his promissory note for the sum of three thousand dollars, with interest at ten per cent., due on the first day of December, 1885, no part of which has been paid; that on the twenty-fourth day of the month named the defendant J. M. Raymond executed to his son, Lucius H. R. Raymond, a bill of sale of certain wagons, farming implements and a buggy, comprising all the unincumbered personal property which the father then owned; that on the same day the father gave to the son a bill of sale of one hundred and fifty hogs and pigs, subject to an incumbrance thereon of three hundred dollars, said property comprising all the personal property of the father which had not been previously incumbered to its full value; that on the thirty-first day of March, 1890, the father executed to his son a quitclaim deed, which purports to convey to the son all the real estate which the father then owned, consisting of several tracts, containing in the aggregate about thirteen hundred acres; that the said real estate was at the time incumbered to an amount greater than its value; that at the time specified J. M. Raymond was insolvent, and that the deed and bills of sale constituted a general assignment of all his property, with preferences, and were fraudulent as against creditors; that Lucius fraudently executed to his sister, Rebecca Raymond, a quitclaim deed for an undivided one-half of the real estate specified; that on the eighth day of April, 1890, the plaintiff commenced her action in the court in which this action was commenced against J. M. Raymond to recover the amount due on his promissory note; that a writ of attachment was issued in that action, which was levied upon the land which the deed purported to convey, and under which Lucius H. R. Raymond, Rebecca Raymond, and certain persons who had leased portions of the land were garnished; that by means of the service of the writ of attachment the plaintiff has secured a lien upon

the real estate and upon the rents and profits thereof; that only a small portion of the real estate has been leased, but that Lucius and Rebecca Raymond intend to re-lease the remainder; that they are insolvent; that by reason of the prior incumbrances the actual value of the real estate, so far as the plaintiff is concerned, consists of the rents and profits which are of the annual value of two thousand dollars; that in the garnishment proceedings against Lucius and Rebecca they have answered and issue has been joined on their answers; and that the rents and profits are in danger of being lost or materially impaired if left under their control. The petition, as originally drawn, alleged that the actions on the note had not yet been determined, but in an amendment it was averred that judgment had been rendered on the note. The petition asks that the conveyances of the real estate made by the father to the son, and by the son to his sister, be decreed fraudulent and void; that a receiver be appointed to take possession of and lease it, and collect the rents and profits therefrom; that the real estate and the rents and profits in the hands of the receiver be subjected to the payment of the judgment; and that the receiver be continued, with instructions to collect the rents and profits, and apply them in payment of the judgment.

The answer denies all allegations of fraud and bad faith, and the alleged insolvency of Lucius and Rebecca Raymond, and alleges that the deed and bills of sale were made in good faith to secure valid and subsisting indebtedness. A temporary receiver was appointed in April, 1890, and on the twentieth day of the next September judgment was rendered on the note in favor of the plaintiff for the sum of five thousand and twenty-two dollars and fifty cents, with interest and costs. The district court adjudged the deeds to Lucius and Rebecca Raymond to be fraudulent and void as against the plaintiff; that the land belonged to J. M. Raymond, and, as

such, is, with the rents and profits for the years 1890 and 1891, subject to the lien of the plaintiff's attachment. The appointment of the receiver was made permanent, and he was authorized to rent the real estate, and collect and apply the rents and profits therefrom in payment of the judgment. The sale of the real estate, and a general execution to satisfy any balance remaining unpaid, were also ordered.

I. When the bills of sale and deed were made by J. M. Raymond he was insolvent, and that fact was

1. FRAUDULENT conveyances: preferences: intent to hinder and delay shared by grantee.

known to the appellants. When the bills of sale were drawn, the description of the land was not available, and, for that reason only, the execution of the deed to the son was delayed a few days. But the three instruments were executed pursuant to a common understanding for the same purpose, and must be regarded as parts of a single transaction. When the land was conveyed it was incumbered to its full value, excepting one tract, containing one hundred and sixty acres. That was worth at least eight hundred dollars more than the incumbrance upon it. The annual rental value of the remainder of the land conveyed was not less than one thousand, five hundred dollars. When the deed was made, none of the incumbrances were in judgment, and it was known that before a deed could be issued under a sheriff's sale the farm could be used for all of one year, and during so much of the next as would be necessary to raise and have the benefit of crops of small grain and grass. As a matter of fact, the incumbrances were not reduced to judgment until so late in the year 1890 that possession of the premises could not be taken under sheriffs' deeds until after the crops of 1891 were gathered. But the value of the right of possession of the farm when the deed was given, excluding the one hundred and sixty acre tract specified, was not less than two thousand, two hundred

dollars, and the total value of what it was intended that the son should acquire under the deed was at least three thousand dollars. The consideration named in the deed was five hundred and twelve dollars; that named in the bill of sale of wagons, buggy, and implements was two hundred and eighty dollars; and that named in the bill of sale of hogs and pigs was five hundred dollars.

It is claimed by the appellants that the father was really owing Lucius one thousand, four hundred and fifty dollars when the transfers of property were made, and that, in addition, he agreed, as a part of the consideration of the transfers, to pay certain debts of his father, which he has done. It appears that he had worked for his father four years at the agreed price of twenty-five dollars per month, and board and expenses when away from home; that he owned a farm of one hundred and sixty acres, and had sold his father corn to the amount of two hundred and fifty dollars; and that he had furnished his father pasturage and some posts. What he had received from his father is not very clearly shown, but he admits having received money and clothing, and it is doubtful if his father was owing him the amounts named in the bills of sale and deed when they were given. In addition to receiving pay on his claims against his father, Lucius agreed, if there was anything left, to pay claims held by George Soper, Dollie Tucker, Lucius Tucker, and the First National Bank of Missouri Valley; and, if there was anything left after those claims were paid, his sister, Rebecca, was to receive one half of it. He paid some of the claims, but it appears that the amount so paid was largely from the proceeds of steers and corn not included in the bills of sale, and that what he paid from other sources amounted to but a few hundred dollars at most, probably to less than two hundred in all. He also paid some claims which were not included

in his agreement, and need not be further considered. It is not practicable to set out the evidence on this branch of the case, and the facts proven, at any greater length than we have done. It is sufficient to say that the preponderance of the evidence shows that the bills of sale and deed were given and accepted for the purpose of preferring certain creditors, and preventing others from collecting their claims; that the son did not act in good faith in attempting to collect what was honestly due him, but that he shared the intent of his father to keep a part of his property from his creditors and received conveyances for property having a value largely in excess of the amount due; that his sister knew of the financial condition of the father, and shared in the fraudulent intent in accepting a deed for an undivided one-half of the land in question.

II. It is said that much of the property conveyed was exempt to the father as a resident of this state, a farmer, and the head of a faimily, and 2. —: —: —: valid as to exempt prop- that creditors can not complain if it was erty. conveyed for an inadequate consideration. That is not true to the extent claimed. The creditor is not prejudiced by any transfer his insolvent debtor may make of property exempt from execution, but in this case such property was conveyed for a consideration, and that fact may be taken into account in ascertaining the consideration received for property conveyed which was not exempt. The amount of exempt property included in the bills of sale is not shown, and no issue in regard to it is tendered by the pleadings, but we are satisfied that its value was small, as compared with that of all the property transferred. The rents and profits which should accrue from the land during the time the debtor could have occupied it were not exempt. If crops had been raised by the debtor, they could have been seized for the payment of his debts; and had he rented the land, the rents could have been appropriated

for the same purpose. Therefore the interest which the deed was intended to transfer, excepting that in the homestead, and including the right of possession, was not exempt. We conclude that the district court, in setting aside the two deeds in controversy, was right, excepting as to the homestead of the father, which included the northwest one-fourth of the southwest one-fourth of section 18, in township 80 north, of range 43 west. That was not subject to execution, and the conveyance, as to it, should not have been disturbed.

III. An appeal was taken in this case from the order appointing a receiver, and the order was reversed. *Clark v. Raymond*, 84 Iowa, 251.

8. RECEIVERS: grounds for appointment of: attachment of lands.

It is insisted by the appellee, however, that the case now presented is not governed by the same rules as that determined on the first appeal, for the reason that, after judgment was rendered against J. M. Raymond in the action on the note, that fact was shown in this case, which was thereafter a proceeding to subject to the payment of a judgment duly recovered property on which she had obtained a lien by virtue of the writ of attachment. The attachment alone created no lien upon the land. *Clark v. Raymond, supra; Boyle v. Maroney*, 73 Iowa, 71; *Howland v. Knox*, 59 Iowa, 46. Nor was any lien obtained by means of the garnishment proceedings, but only a right to proceed against the garnishees personally. *Mooar v. Walker*, 46 Iowa, 166; *McConnell v. Denham*, 72 Iowa, 494; *Booth v. Gish*, 75 Iowa, 451; *Clark v. Raymond, supra*. Section 2903 of the Code authorizes the appointment of a receiver "on the petition of either party to a civil action or proceeding wherein he shows that he has a probable right to or interest in any property which is the subject of the controversy, and that such property or its rents or profits are in danger of being lost or materially injured or impaired." Courts exercise the power to appoint a

receiver to take property from the possession of the holder of the legal title with caution, and will do so ordinarily only when there is no other adequate remedy. High on Receivers, sections 463, 553, 555. Before a receiver will be appointed it must be made to appear that the appointment is authorized by the statute. Applications for receivers made by mortgagees have been denied frequently, although the insufficiency of the mortgaged property to satisfy the mortgage debt, and, in some cases, the insolvency of the mortgagor, were shown. See *Swan v. Mitchell*, 82 Iowa, 307; *Paine v. McElroy*, 73 Iowa, 81; *White v. Griggs*, 54 Iowa, 650; *Myton v. Davenport*, 51 Iowa, 583. In some of these cases stress is laid upon the fact that under the statute the owner of real estate is given one year from the date of the sale on execution in which to redeem from such sale, and that during that time he is entitled to the possession of the property. It is certainly true that under the statute the creditor must show that he has a probable right to or interest in the property which is in controversy, and that the property or its rents or profits are in danger of being lost or materially injured or impaired. In this case the plaintiff has failed to show any right to or interest in the property or its rents and profits, within the meaning of the statute, which she cannot enforce by ordinary methods and process which are open to her. The insolvency of the appellants is alleged, but not proven. We therefore conclude that she was not entitled to the appointment of a receiver.

The decree of the district court setting aside the conveyances of real estate, and making it subject to the payment of the judgment recovered on the note of J. M. Raymond, is affirmed, excepting as to the homestead. The rents and profits of the real estate, the conveyances of which are set aside, are subject to the payment of the judgment if taken by due process of

law, but the plaintiff has no lien upon them. So far as the decree of the district court relates to the homestead, and to the appointment and powers of a receiver, it is REVERSED.