BELLE THOMAS et al., Appellees, v. NETTIE TIMONDS, Appellant.

**RECEIVERS: Grounds of Appointment—Lis Pendens.** Equity always proceeds with extreme caution in appointing a receiver as against a defendant who not only holds the legal title to property but is in possession and enjoyment thereof. Appointment held improper. (Sec. 3822, Code, 1897.)

PRINCIPLE APPLIED: A father, prior to his death had, by deeds and assignments, transferred all his real and personal property to a blind daughter, and later executed a will leaving all his property to the same daughter. After his death, other daughters brought an action to set aside these deeds and assignments, on the grounds of the mental incompetence of the father and the undue influence of the grantee. Pending this action, the court appointed a receiver of the property. The defendant was worth, in her own right, some $8,000. As to the property in controversy, no waste was shown, it was under reasonable rental, and needed improvements were under way. Weeds had not been fully kept down, but no impairment of value resulted therefrom. A repair of a residence was at defendant's own expense. Being blind, it was necessary for another person to prepare defendant's checks for her signature, but no loss had occurred from such practice. Plaintiffs did not make a persuasive showing that they probably would succeed in their action. *Held*, the appointment of a receiver was improper.

GUARDIAN AND WARD: Appointment—Temporary Appointment— Effect. Temporary guardianship under *ex parte* showing creates no presumption whatever as to the ward's mental condition.

WILLS: Testamentary Capacity—Permanent Guardianship—Effect. *Arguendo*, principle recognized that the findings involved in the appointment of a permanent guardian are not *conclusive* evidence of testamentary incapacity.

WILLS: Probate—Non-existence of Property—Effect. The non-existence of property to which a will could apply is no impediment to the probate thereof.

ESTOPPEL: Equitable Estoppel—Shifting of Position. *Arguendo*, it is suggested that, if a litigant secured an order declaring a will inoperative because the title to property on which the will would operate had already passed to devisee under former deeds, such litigant would thereafter be estopped to question the effectiveness of such deeds to pass title.

TRIAL: Order of Trial—Staying One of Two Actions. The court may very properly stay all proceedings in one action until the trial and determination of another action between the same parties, when the trial of such other action may be determinative of the entire controversy.

PRINCIPLE APPLIED: A father conveyed all his property to a daughter and later executed a will leaving all his property to the same daughter. After his death, other heirs instituted

two proceedings: (1) An equitable action to set aside the said conveyances because of mental incapacity of the grantor and undue influence by grantee, and (2) a contest of the will. *Held*, the equitable action was properly stayed until the determination of the will contest.

*Appeal from Wapello District Court.*—SENECA CORNELL, Judge.

WEDNESDAY, NOVEMBER 15, 1916.

REHEARING DENIED, SATURDAY, FEBRUARY 20, 1917.

APPEAL by defendant from order appointing receiver, and by plaintiffs from an order overruling motion to strike will or declare it inoperative, and an order sustaining an application that the trial of an equity cause be postponed until contest on will be determined.—*Affirmed* on plaintiff's appeal; *reversed* on defendant's appeal.

*Tisdale & Heindel, Jaques & Jaques* and *Chester J. Eller,* for appellant.

*Roberts & Webber,* for appellees.

LADD, J.—James Timonds died September 8, 1915, at the age of 88, leaving him surviving 6 daughters, the 5 plaintiffs and defendant. A temporary guardian of his person and property had been appointed January 8, 1914, and had duly qualified as such, and subsequently trial was had to the court, but, on certiorari proceeding, the order denying trial to jury was annulled. *Timonds v. Hunter, Judge,* 169 Iowa 598. Decedent departed this life before the issue as to his mental capacity could be passed on by a jury. About October 8, 1912, he had assigned to defendant a note of $6,000 secured by a real estate mortgage, and on January 12, 1914, and June 10th following, had conveyed to her 165 acres of land. Decedent had previously conveyed a life estate in the 40 acres with this clause in the deed:

1. RECEIVERS: grounds of appointment: lis pendens.

"At her death, the above-described property shall revert to the legal heirs of said James Timonds."

Reciting these facts, the petition alleged that, in making these transfers, decedent was of unsound mind, and induced so to do by the undue influence of defendant, and prayed that the deeds and assignments be set aside, and each daughter be decreed entitled to one sixth of the property; and that, in event this relief be denied, plaintiffs be decreed entitled to the remainder in the 40 acres upon the expiration of the defendant's life estate therein. The answer put in issue the allegations of mental incapacity and undue influence. Thereupon, plaintiffs applied for the appointment of a receiver, basing such application on the allegations of the petition, and averring that administrators had been appointed, who had filed inventory and given notice of their appointment; that, besides said conveyances, decedent had transferred to defendant all his notes and mortgages, amounting to $5,000 or $6,000, and other personal property, so that apparently nothing remained to administer, and a contest on the will left by decedent would be of no advantage; that defendant had squandered the assets which rightly belong to the estate; that the pleadings on their face showed more than a probable right to recover, and the best interests of the heirs would be served if a receiver were appointed to take charge of the personal estate and the rents and profits of the land until the cause should be tried. It was further averred that defendant was blind; that the will of decedent was void because of his mental unsoundness and her undue influence, and for that there was no property subject to its operation.

By way of petition of intervention, the administrators joined in the application for the appointment of a receiver. The defendant put in issue the allegations, and admitted that she had been blind since 11 years of age, and each side filed affidavits. From these it appeared that, aside from

the property in controversy, defendant was possessed of
40 acres of unincumbered land, worth from $2,500 to $3,000,
and $5,000 worth of notes and mortgages above any in-
debtedness. It was not claimed but that she was procur-
ing reasonable rentals for the land, and waste was not
shown. She caused some timber to be cut from the land,
but this was to be sawed into plank for the barn floor.
Some of the fence was somewhat out of repair, but she had
arranged to erect a new fence, the posts already having
been dropped along the line. There were some weeds and
brush along a fence, which she had not had cut, the brush
having been growing several years. A tenant had not kept
a tract of land rented free from weeds, and a patch of
about 8 acres was somewhat weedy, owing to the wet sea-
son. But these difficulties often confront landowners, and
it cannot be said, in view of the character of the season,
that the land was not managed as well as rented land ordi-
narily is. Surely its condition was not such as to impair
its rental value during the pendency of the action, nor per-
manently injure it. Defendant remodeled and enlarged the
house, installed a heating plant and constructed a new
fence about the yard, at a cost of about $3,000; but, as she
paid therefor from her own means, plaintiffs have no room
for complaint. The same is to be said of refurnishing the
house. If she has always been extravagant, as several af-
fiants say, this does not appear to have unduly impaired
her father's estate nor her own, and alone affords no ground
for interference with her possession of the property. Her
condition renders it necessary that another write checks
for her on banks before she signs them, and although this
appears to have been done by a man of scant business ex-
perience and capacity, he is shown to have acted honestly
and nothing has been lost through him. Nothing in this
record points to any want of ability on her part to manage
the land prudently, and that she is blind is not a ground

for denial to her of the opportunity to manage the estate presumptively belonging to her. Nor do we find any showing warranting the inference that plaintiffs will be likely to succeed in their action. True, some of the affiants say that decedent was weak physically and mentally, and had another transact business for him several years prior to his death, but this falls far short of showing that he was without sufficient capacity to make the transfers alleged, and there was no evidence of undue influence.

2. GUARDIAN AND WARD: appointment: temporary appointment: effect.

Counsel for plaintiff rely somewhat on the existence of the temporary guardianship. A temporary guardian is appointed on an *ex parte* showing, and such appointment is of no significance as to the condition of the party for whom appointed, save in the care of person and property, and, until permanent appointment, after opportunity of being heard has been afforded and proof made, no presumption whatever arises concerning the mental condition of the ward. To justify the appointment of a receiver to conserve property in controversy *pendente lite* it should be made to appear: (1) That the applicant therefor has a probable right to or interest therein; and (2) that such property or its rents or profits are in danger of being lost or materially injured or impaired; and further, (3) that the interest of one or both parties will be promoted by such appointment and the substantial rights of neither impaired; and (4) that the order will be best for all concerned. Section 3822, Code. Courts are reluctant in interfering with the possession of property, though in controversy, especially when such possession is that of the party having legal title, and will not do so through the appointment of a receiver in the absence of a showing of a probability that the applicant will be entitled to a decree on final hearing. High on Receivers, Section 8; *Norris v. Lake,*

(Va.) 16 S. E. 663; *Vila v. Grand Island E. L. I. & C. S. Co.,* (Neb.) 97 N. W. 613.

If upon the entire record this is a matter of much doubt, the application will be denied. *Owen v. Homan,* 4 H. L. Cas. 997; *Bank of Florence v. United States S. & L. Co.* 104 Ala. 297 (16 So. 110); *Vila v. Grand Island E. L. I & C. S. Co.,* 68 Neb. 222 (94 N. W. 136, 97 N. W. 613).

As seen, there was no sufficient showing that injury to the property was likely or that any rents or profits therefrom might be lost. The matter of appointing a receiver *pendente lite* rests, to a considerable extent, in the discretion of the court; but this is a legal discretion, and must be exercised in view of all the circumstances of the case and the delicacy of the function performed.

"As against a defendant in the possession and enjoyment of property which is the subject-matter of the litigation, equity always proceeds with extreme caution in appointing a receiver." High on Receivers (4th Ed.), Section 19.

The decisions fully sustain the text. As forcibly said in *Crawford v. Ross,* 39 Ga. 44:

"The high prerogative act of taking property out of the hands of one and putting it in pound, under the order of a judge, ought not to be taken, except to prevent manifest wrong, immediately pending."

Whether a receiver shall be appointed in such a case as this depends on whether, from the showing made, it can be said: (1) That plaintiff probably will succeed in the suit; and (2) that the property is likely to be injured if left in the hands of the person who may be in possession, or the rents and profits lost. Neither finding was warranted in this case, and we are of opinion that the court erred in appointing a receiver.

II. 'The plaintiffs moved that the al-
leged will of decedent be stricken from the
files or be declared inoperative, for that
(1) decedent had disposed of all his prop-
erty before its execution and had noth-
ing to will, and (2) when the will was made, decedent was
under guardianship. The last proposition has been dis-
posed of. There was no inquisition into the condition
of decedent's mind nor any determination thereof.
Had a permanent guardian been appointed, however, the
finding involved therein would not have been conclusive evi-
dence of his inability to make a will, and whether prima-
facie evidence of mental incapacity need not be determined.
*In re Will of Fenton*, 97 Iowa 192.

*3. WILLS: testamentary capacity: permanent guardianship: effect.*

Nor do we think the ownership of prop-
erty determinative of whether a will shall
be admitted to probate. Anyone of full age
and sound mind may execute a will (Sec-
tion 3270, Code), and any person having custody of such
will, upon being informed of the death of the maker there-
of, is bound to file it with the clerk of courts (Section 3282,
Code). Thereupon the clerk is required to open and read
it, and a day shall be fixed by the clerk or court for prov-
ing it. Section 3283, Code. If contested, either party is
entitled to a jury trial. Whether the decedent left prop-
erty which may pass under the will is a matter of subse-
quent inquiry, for, until admitted to probate, no one can
say whether it be the will of decedent. *Winters v. Win-
ters*, 102 Iowa 53. The only way to get rid of a will is for
the testator to cancel or destroy with the intention of so
revoking, or to execute a subsequent will. Section 3276,
Code. As said in *Morcy v. Sohier*, 63 N. H. 507 (56 Am. R.
538, 542) :

*4. WILLS: probate: nonexistence of property: effect.*

"If the writing called a deed, dated August 5, 1880,
had been an ordinary absolute conveyance of all the grant-

or's property, leaving the grantor without any estate, it would not prevent the probate of the will subsequently made. The question whether a will is entitled to probate does not depend upon the question whether, at the time of the testator's death, or at any previous or subsequent time, there was any property which it could dispose of. As the execution and delivery of a deed may be proved in a real action before the question of its legal effect is adjudicated, so a will may be proved in the probate court without a trial of the question whether it will be inoperative for want of title in the testator; and on the question of probate, it is not material, as matter of law, whether a deed purporting to convey all the testator's property was made before or after the will. If the will is made first, a devisee may have it proved to enable him to contest the deed in a writ of entry; and if he is the grantee in the deed, he may have the will proved for the purpose of enabling him to claim under it in case the deed should be held, on any ground of law or fact, to be invalid."

Of course, if the property has been previously disposed of, it will have passed by virtue of the deeds and assignment, and not under the will. But suppose these were executed by decedent when of unsound mind, or involuntarily, as is alleged by plaintiffs in this suit, and title should be set aside, then, if the will be found valid, surely defendant would take thereunder.* And if plaintiffs were to procure an order declaring the will inoperative because of title's having passed to her by the conveyances mentioned, would they not be estopped from questioning in this suit whether such deeds and assignments were effective in passing title to her? A party is estopped to deny matters which he has pleaded and thereby obtained an adjudication in his favor, in order to defeat an action against him, the parties being the same. *District Township of Clay v.*

5. ESTOPPEL: equitable estoppel: shifting of position.

*Independent Dist. of Buchanan,* 69 Iowa 88. But counsel for plaintiffs undertake to obviate this result .by arguing that if, in executing the deeds and assignments, he acted voluntarily and with sound mind, title passed, and if of unsound mind or laboring under undue influence, these were merely voidable, and, upon recovery of his freedom and mental capacity so as to be able to execute a will, he must have disavowed and revoked them, and, as he did not do so, title remained in the grantee, and there was nothing to dispose of by will. If his omission to repudiate the transaction must have confirmed the transfers as to defendant, it is rather difficult to understand why the consequence would not be the same as to plaintiffs. If he was not mentally competent at the time, it is not to be assumed he would have remembered in subsequent lucid moments what he then did, and, for all that appears, he may not have done so. A better argument would be that the execution of the will was intended, as is doubtless the fact, to confirm the previous disposition of his property. The case relied on (*Moore v. Waldstein* [Ark.], 85 S. W. 416) has no bearing on the question, for it merely construes a statute of Arkansas permitting grantor to apply to a court of chancery to have a conveyance by him in fraud of creditors set aside and canceled for the use and benefit of the heirs of said grantor, saving the rights of creditors and declaring that, where neither party to the suit seeks to have the conveyance canceled, the heirs of the grantor may do so, and, upon decree's being entered establishing title in the heirs subject to the rights of creditors, the property will not pass under the will of the grantor. The property was held not to have passed under the grantor's will for that the statute exacted that, on setting aside the fraudulent deed, title be settled in the grantor's heirs, and therefore it could not pass under the will. The point as to whether a cause of action may be willed is discussed; but, as the property, and not cause of action, was undertaken to be

disposed of by will, it is not involved. Nor is defendant claiming on a cause of action decedent may have had. That is being asserted by plaintiffs. The motion to strike or declare the will inoperative was rightly overruled.

6. TRIAL: order of trial: staying one of two actions.

III. Defendant moved that further proceedings in this case be stayed until the contest interposed by plaintiffs to the admission of the decedent's will to probate be determined. That instrument purported to devise and bequeath all his property to defendant. The motion was sustained, and from such order plaintiffs have appealed. Manifestly, if the will is found invulnerable to the charge that its execution was the product of undue influence exercised by defendant, or that the decedent was of unsound mind, then defendant would take the property in controversy under the will, regardless of who might succeed in this action. In that event, a trial of this suit in equity would be unnecessary. On the other hand, were this case heard first, as the several transfers antedate the will considerable periods, the decision would not be decisive of the will contest. Moreover, until the will should be admitted to or denied probate, it could not be known whether the plaintiffs had such an interest in the property as would entitle them to maintain the suit to set the deeds and assignments aside. For these reasons, the court rightly ordered that the contest on the probate of the will be first determined. The order, although in form a restraining one, was appropriate for the disposition of the business in court, by determining which of two cases involving the same property should be first tried, and directing that nothing be done in the other pending the determination of the case first to be passed on. There was no error. The order appointing a receiver is reversed, and the orders overruling the motion to strike the will or declare it inoperative, and fixing the order of trying the causes, are—*Affirmed.*

GAYNOR, C. J., EVANS and SALINGER, JJ., concur.