LLOYD W. BENNETT et al., appellees, v. ELDON MILLER, INC., appellant.

No. 50105.

(Reported in 106 N.W.2d 257)

NOVEMBER 15, 1960.

D. M. Elderkin and J. J. Locher, Jr., of Barnes, Wadsworth, Elderkin, Locher & Pirnie, both of Cedar Rapids, for appellant.

William L. Meardon and D. C. Nolan, both of Iowa City, for appellees.

PETERSON, J.—Plaintiffs filed their petition in equity in the District Court of Johnson County on March 21, 1960. They alleged plaintiffs entered into contracts with defendant under which they agreed to transport commodities as independent contractors. The agreements, copies of which are attached to the petition, provided that money should be withheld by defendant up to the amount of $1000, as a guarantee of performance. Petition was filed on behalf of themselves and all other truck drivers or operators who executed similar agreements with defendant.

One provision in their contracts, and in contracts executed by other persons whom they claim to represent, was the same

or similar to the provision held void by this court as a penalty clause, in Huntsman v. Eldon Miller, Inc., 251 Iowa 478, 101 N.W.2d 531.

Plaintiffs filed their action in equity as a class action, praying for an accounting as against defendant as to all sums withheld under their contracts and under the contracts of all other parties similarly situated. As a part of its petition plaintiffs pray for appointment of a receiver.

In connection with the filing of the petition plaintiffs served upon Eldon Miller a subpoena duces tecum requiring him to appear and bring all books and records of the corporation showing the names and addresses of all former employees, drivers-operators and independent contractors, who posted a bond or had deductions made from their earnings.

To this petition defendant filed:

1. Motion to drop parties, on the ground plaintiffs were improperly joined, and that it was not a class action under rule 42, Rules of Civil Procedure.

2. Motion to quash the subpoena.

3. Motion to transfer the action to law.

4. Resistance to the appointment of a receiver.

Upon hearing, the trial court overruled defendant's motion to drop parties; to quash subpoena; and to transfer to law. As to defendant's resistance to the appointment of a receiver the trial court fixed a time for hearing at a date in the future. Before such date this appeal from interlocutory order had been taken and the formal hearing on the question of receivership was never held.

Defendant filed application in accordance with R.C.P. 332 for appeal from interlocutory order which, upon hearing, was granted.

I. Appellant relies upon following errors for reversal.

1. Overruling defendant's motion to drop parties, for the reason the petition shows on its face the plaintiffs are improperly joined, and same is not a proper class action under rule 42.

2. Overruling defendant's motion to transfer to law.

3. Overruling defendant's motion to quash the subpoena duces tecum.

4. Failing to sustain defendant's resistance to plaintiffs' application for appointment of a receiver.

Since the basis of this action is our decision in Huntsman v. Eldon Miller, Inc., supra, we will briefly review the case. Huntsman brought an action to recover funds held by defendant (same as defendant herein) for alleged breach of contract. Plaintiff alleged the provisions under which the funds were withheld by defendant constituted a penalty. Such provisions (pages 480, 481 of 251 Iowa), as quoted from Huntsman case, are as follows:

" '(9). The Second Party [plaintiff's assignor] shall furnish a surety bond in the amount of $1,000 * * * conditioned upon full and faithful performance hereunder * * *, provided, that in lieu of such bond, the Second Party may deposit with the First Party the sum of $1,000 in cash, either as a lump sum or by authorizing the First Party to withhold 10% of all payments otherwise due the Second Party until such withholdings aggregate $1,000. If the Second Party shall render full and faithful performance * * * the deposit shall be paid over to the Second Party, * * *; but if the Second Party shall fail to render such full and faithful performance, then the First Party * * * shall be entitled to the $1,000. * * *

" '(16). It is expressly understood and agreed that if the Second Party shall be in default under any of the terms of this agreement or shall be in violation of the Interstate Commerce Commission Motor Carriers' Safety Regulations, or shall falsify his records or commit any other illegal * * * act, or shall fail or refuse to have said equipment available as contemplated hereunder, then and in any of such events, the First Party may terminate this agreement forthwith, and retain any amount then held by it under the provisions of paragraph (9).'

"Elsewhere in the contract are other requirements to be performed by the second party, such as: keeping the equipment in good condition and appearance; paying the wages of any relief drivers and social security, unemployment and other taxes; pay all license and permit fees arising out of the use of the equipment; save first party harmless from all cargo loss or damage due to the negligence of the second party; and to

reimburse first party for any expense, cost or damage due to delay by the second party in the pick up, transportation or delivery of any load."

In a pretrial conference it was stipulated that defendant had withheld from plaintiff or his assignor under said contract the sum of $754.53.

In support of our decision we cited the following authorities: Kelly v. Fejervary, 111 Iowa 693, 83 N.W. 791; State ex rel. Switzer v. Overturff, 239 Iowa 1039, 33 N.W.2d 405, 4 A. L. R.2d 1343; Holt v. Doty, 193 Iowa 582, 588, 187 N.W. 550, 552; Foley v. McKeegan, 4 (Clarke) Iowa 1, 66 Am. Dec. 107; Sanders v. McKim, 138 Iowa 122, 115 N.W. 917; McMurray v. Faust, 224 Iowa 50, 276 N.W. 95; 25 C. J. S., Damages, section 111; 15 Am. Jur., Damages, section 253; Restatement, Contracts, section 339 (1b).

Our decision (page 482 of 251 Iowa) was: "Under the authorities, above cited, the trial court correctly held that these provisions constituted a penalty and that they were void."

This is the only question decided in the Huntsman case. Defendant claimed he should have had the right to prove actual damages occasioned by plaintiffs' breach. However, defendant filed no pleading claiming specific damages and the trial court correctly held the question was not in the case.

In view of our decision in the current case, the gate is open for defendant to plead specific damages as to any breach of contract on the part of remaining plaintiffs herein, or any other parties who might sue.

II. The alleged bases for this action are the provisions of R. C. P. 42 which are as follows:

"42. Class actions. If the persons composing a class are so numerous that it is impracticable to bring all before the court, such number of them as will insure adequate representation of all may sue or be sued on behalf of all, where the character of the right involved is:

"(a) Joint or common, or held primarily by one who has refused to enforce it, thereby entitling the class or its members to do so; or

"(b) Several, and the action seeks to adjudicate claims which do, or may, affect specific property; or

"(c) Several, and a common question of law or fact affects the several rights, and a common relief is sought."

 Class actions have been divided through the years by judicial pronouncement. Paragraph "(a)" creates what is commonly known as a "true" class action. Paragraph "(b)" a "hybrid" class action. Paragraph "(c)" a "spurious" class suit. Riter v. Keokuk Electro-Metals Co., 248 Iowa 710, 82 N.W.2d 151; Farmers Co-op. Oil Co. v. Socony Vacuum Oil Co., Inc., 8 Cir., 133 F.2d 101.

The typical class case in Iowa is the recent case of Riter v. Keokuk Electro-Metals Co., supra. This was an action started by six plaintiffs on their own behalf and on behalf of about 2000 other persons similarly situated for abatement of a nuisance maintained by defendant in the form of "emission of noxious fumes, smoke, particles, dust, grime and polluted air, which were carried by air upon and into the homes and premises of plaintiffs and others similarly situated * * *." (248 Iowa, at page 713)

We held it was a spurious class suit, under rule 42(c). We held the judgment in such action would be binding upon the named plaintiffs, the defendant and their privies. It would not bind others beyond the principle of stare decisis.

It will readily appear that no situation similar to this pertains in the case at bar.

III. The great body of law forming a precedent as to whether or not a certain state of facts creates a class action appears in Federal decisions. They arise because of Federal rule 23, which is similar to our rule 42.

The case at bar is not a "true class action." This is conceded by appellees in the following language: "No attempt is made by plaintiffs to claim a 'true' class action, since the character of the right involved is obviously not joint nor common nor derivative."

Appellees contend: "That the pleaded facts of the petition allege a 'hybrid' class action, or at the very least a 'spurious' class action."

■ The petition does not contain allegations which constitute a "hybrid" class action. Rule 42(b) "seeks to adjudicate claims which do, or may, affect *specific property*." (Emphasis supplied.) There is no allegation in plaintiffs' petition as to specific property. The claim is that because of our decision in the Huntsman case defendant owes the plaintiffs an amount of money, depending on what amount plaintiffs deposited under their written agreements, and what if any counterclaim defendant may hold.

IV. Plaintiffs base their class action on the allegation that they, and all persons similarly situated, are entitled to the benefits of the decision in Huntsman v. Eldon Miller, Inc., supra. On the present state of the record we are restricted to the pleadings alone.

■ Plaintiffs are not members of a group which can qualify under rule 42(c) to maintain a spurious class action, for two reasons:

1st. Each plaintiff has a complete, speedy and adequate remedy at law.

2nd. The only common question of law or fact arises through our decision in the Huntsman case. To the extent that plaintiffs' agreements, and others similarly situated, are identical with the Huntsman agreement, there is a common question. As to the amounts deposited by each plaintiff, and as to any damages which defendant can prove by breach of the agreements, each case is different, and the relief sought would vary. Pelelas v. Caterpillar Tractor Co., 7 Cir., 113 F.2d 629; Farmers Co-op. Oil Co. v. Socony-Vacuum Oil Co., Inc., 8 Cir., 133 F.2d 101; Davies v. Columbia Gas & Electric Corp., 151 Ohio St. 417, 86 N.E.2d 603; Garfein v. Stiglitz, 260 Ky. 430, 86 S.W.2d 155; Johnson v. Riverland Levee District, 8 Cir., 117 F.2d 711, 134 A. L. R. 326; Fetherston v. National Republic Bancorporation, 280 Ill. App. 151; Associated Almond Growers v. Wymond, 9 Cir., 42 F.2d 1; Michelsen v. Penney, 10 F. Supp. 537.

In Pelelas v. Caterpillar Tractor Co., supra, class action relief was denied, the court saying: "The action was essentially one to recover for plaintiff moneys claimed to be due him as moneys had and received * * *." (Page 632 of 113 F.2d)

In Farmers Co-op. Oil Co. v. Socony-Vacuum Oil Co., Inc., supra, plaintiff sued to recover for itself and 700 members for overcharges by defendant as established in a conspiracy suit. Judge Clark, a member of the Supreme Court advisory committee for revising rules, explained rule 23 (same as our rule 42) as follows at page 105 of 133 F.2d:

" 'Rule 23, Class Actions, represents an attempt which we have made to state the general equity rule of representative suits. * * * What we are trying to do is to classify the different forms of representative suits.

" 'The first [clause, 23(a)(1),] is the case of a joint, common, or derivative right. * * * The second [clause, 23(a)(2),] deals with the adjudication of claims to property. The third [clause, 23(a)(3),] is sometimes referred to as the spurious class suit, and is only a limited form of general joinder. To use terms sometimes applied, one is the true class suit; two is the hybrid class suit; and three is the so-called spurious class suit. The first two are really the proper cases of class suits, where the suing by the representative really should be binding and res adjudicata on those who are represented. In (3) it is not binding and this is, as I say, merely a short cut to cases where joinder is permissive.' * * *

"In the present case the rights, that is the causes of action sought to be enforced, are several, and there exist common questions of law and fact; but it cannot be said that common relief is sought. The damages sought to be recovered for plaintiff and its several stockholders are different. * * *

"Since in the present case the rights of the plaintiff and of its stockholders are not identical, it cannot be said that they belong to the same class nor that plaintiff can act for them."

The court permitted plaintiff to amend its petition on the theory of permissive joinder. However this was under Federal Rule 20, of which we have no counterpart.

In Davies v. Columbia Gas & Electric Corp., supra, 151 Ohio St. 417, 423, 86 N.E.2d 603, 606, a class case was denied. This was a suit for damages for diluting natural gas. The court said: "As has been observed, there is no community of interest

among those comprising the 'class' with a right of recovery based on the same essential facts."

In Garfein v. Stiglitz, supra, the county clerk had overcharged all auto owners $3.20, and plaintiff sued for himself and all similarly situated.

The court said the mere numerousness of the injured parties was not sufficient ground for permitting some to sue for others, since their several claims were separate, distinct and individual and did not present a community of interest.

In Johnson v. Riverland Levee District, supra, plaintiff sued for himself and others who held $129,500 face value of delinquent bonds. On one of the grounds for dismissal the court held at page 714 of 117 F.2d: "It appears from the amended complaint that plaintiffs have a complete and adequate remedy at law * * *."

Fetherston v. National Republic Bancorporation, supra, was an action by certain depositors against officers and directors for conspiracy on behalf of plaintiffs and all other depositors. It was held not to be a class suit. The court said at page 160 of 280 Ill. App.: "We find no cases deciding that mere numerousness of parties alone will confer jurisdiction upon a court of equity in a case that is properly cognizable at law."

Associated Almond Growers v. Wymond, supra, was a suit of 100 purchasers of tracts (out of 800) purchased under same misrepresentation as to all buyers. It was held it could not be maintained as a class suit, and was not of equitable cognizance.

Michelsen v. Penney, supra, was an equity suit by some depositors, on behalf of all, against a director of a bank for misrepresentation and deceit as to solvency. Held each depositor had an adequate remedy at law, and a class suit was not maintainable. The court said at page 540 of 10 F. Supp.: "In an action at law based on deceit said to have been practiced on a large number of persons, a class suit cannot be maintained."

V. Our decision that no class action is involved herein automatically decides the three motions filed by defendant to: 1. Drop certain parties. 2. Transfer to law. 3. Quash subpoena duces tecum.

Two plaintiffs may continue to pursue this action: Lloyd

W. Bennett and Robert Keith Hanson. These two parties executed jointly the agreement Exhibit "A".

Lloyd W. Bennett who executed Exhibit "B" individually; Donald R. Duvall who executed Exhibit "C"; Vernon D. Olson, one of the parties to Exhibit "D"; and Fred W. Finley and Charlotte E. Finley, husband and wife, who executed Exhibit "E", are all dropped as parties plaintiff.

The action of Bennett and Hanson v. Eldon Miller, Inc., is transferred to law.

The books and records described in the subpoena duces tecum are immaterial and irrelevant to such action at law, and same is quashed.

█ VI. As to the question of receivership plaintiffs make no allegation of insolvency. They only make the general broad and indefinite allegation that the "money withheld is in danger of being lost or impaired or materially injured."

Approaching the situation realistically, of what is a receiver to be appointed? It can hardly be the intention of plaintiffs that· such receiver, if appointed, is to take over this corporation or business. They attempt to overcome the apparent difficulties involved in this question by alleging plaintiffs' money was held in trust for them, and the receiver should take over such funds. However, the claims of plaintiffs are completely unliquidated, and what funds should be placed in trust?

When plaintiffs entered into their contracts with defendant they neither required nor secured any segregation of the funds deposited, as security against any breach of contract by defendant.

Our statutory provision as to appointment of a receiver appears in section 680.1, 1958 Code. Pertinent parts are as follows: "On the petition of either party to a civil action or proceeding, wherein he shows that he has a probable right to, or interest in, any property which is the subject of the controversy, and that such property, or its rents or profits, are in danger of being lost or materially injured or impaired * * * the court * * * if satisfied that the interests of one or both parties will be thereby promoted, and the substantial rights of neither unduly infringed, may appoint a receiver * * *."

 Normally a charge of insolvency is necessary for the appointment of a receiver pendente lite. At least to justify such appointment a receiver should not be appointed except to prevent manifest wrong immediately pending. Plaintiffs' allegations do not sustain such a contingency. Clark v. Raymond, 86 Iowa 661, 53 N.W. 354; Wallace v. Pierce-Wallace Pub. Co., 101 Iowa 313, 70 N.W. 216, 38 L. R. A. 122, 63 Am. St. Rep. 389; Thomas v. Timonds, 179 Iowa 509, 159 N.W. 881; 45 Am. Jur., Receivers, sections 8 and 10.

The gist of and holdings in said cases are:

Where insolvency was not proven plaintiff was not entitled to appointment of receiver. Clark v. Raymond, supra.

Allegation of insolvency is necessary for appointment of receiver. Wallace v. Pierce-Wallace Pub. Co., supra.

Thomas v. Timonds, supra (page 515 of 179 Iowa), quoting with approval from Crawford v. Ross, 39 Ga. 44, stated: " 'The high prerogative act of taking property out of the hands of one and putting it in pound, under the order of a judge, ought not to be taken, except to prevent manifest wrong, immediately pending.' "

 45 Am. Jur., Receivers, section 8, states: "* * * in order to justify the appointment of a receiver, an applicant must establish a legal right to the property in himself or that he has a lien thereon or that it constitutes a special fund out of which he is entitled to satisfy his demand." Idem, section 10: "* * * the general rule is that in the absence of statute, a receiver will not be appointed at the instance of a simple contract creditor without a lien."

The rulings of the trial court are reversed. The court shall make appropriate rulings in the case to comply with this decision.—Reversed.

BLISS, GARFIELD, OLIVER, HAYS, THOMPSON, GARRETT, and THORNTON, JJ., concur.

LARSON, C. J., takes no part.