FRED SLINGER, Appellee, v. FARMERS MUTUAL HAIL INSURANCE ASSOCIATION of Iowa, Appellant.

No. 42610.

330

DECEMBER 26, 1934.

Hal W. Byers, W. G. Henke, and Senneff, Bliss & Senneff, for appellant.

R. W. Zastrow and Jens Grothe, for appellee.

PER CURIAM.—Opinion written by Justice CLAUSSEN, adopted by the court.

This action was brought to recover on a policy insuring crops against damage by hail. In the case before us the crops were not totally destroyed, so in order to determine the amount of recovery it became necessary to establish the percentage of loss due to the hail.

In the course of the trial the actual yield per acre of the damaged fields was shown. Plaintiff then sought to establish, and over objection was permitted to prove, the yield of the land in an average year, taking into consideration the condition of the fields at the time the hailstorm occurred. The damage was sustained in the year 1931, and the record establishes that in the vicinity where

the crops were being raised the year 1931 was quite deficient in rainfall during the vital parts of the growing season.

It is matter of common knowledge that the abundance of yield of grain crops raised in Iowa is profoundly influenced by lack of sufficient rainfall at proper times. It is evident that conditions of rainfall and temperature can have as destructive effect on crops as hail, and that the destruction wrought by hail in a given year cannot be measured by a comparison between the ultimate yield of the year in which the hail fell and the yield of the average year.

In the absence of a total destruction of the crop, the percentage of destruction due to hail must in the nature of things be a matter of opinion. There are no yardsticks by which partial destruction may be accurately measured. The percentage of destruction may undoubtedly be established through opinion evidence of competent witnesses, but the percentage of destruction cannot be established by proof of the actual yield after damage by hail and the yield of the average harvest. We do not suggest that it may not be established that the season in question is an "average" season, and that in consequence the yield of the damaged field, but for the damage by hail, would naturally have been an average yield. With such a background a comparison between the actual yield and the average yield would furnish some basis for a determination of the percentage of destruction wrought by the hail. But in the first instance, and without such proof, testimony concerning the average yield is entirely irrelevant to the question of the percentage of destruction produced by the hail, and is, of course, immaterial to every other issue in the case. We are agreed that a competent witness might properly have been allowed to express an opinion concerning the yield which the fields would have produced but for the hail. Such opinion would of course take into account the vicissitudes of the weather during the season that the particular crop was being raised. Courts recognize that men acquire a canny ability to evaluate the many factors that enter into the production of crops, and upon relevant matters the opinions of competent witnesses are admissible in evidence. The percentage of destruction occasioned by the hail is determined by the ratio between the crop raised and the crop that would have been raised but for the hail, rather than the ratio between the crop raised and the average yield. That there is a vast difference between the crop of any one

year and the average crop is evidenced with tragic graphicness by lean herds and empty granaries in many parts of Iowa.

The possible consequence of the admission of the testimony concerning the average yield is made evident by the fact that witnesses gave the yield of the average year at 40 and 50 bushels per acre for corn, while the testimony in relation to the actual yield in 1931 on similar land ran as low as 20 bushels per acre. It would make a great deal of difference in the result if the actual yield after damage by hail were compared with an average yield or with the probable yield of the hot, dry year.

II. As might be expected, the testimony offered by plaintiff to establish the percentage of loss took a wide range. The de-fendant naturally countered by the use of witnesses covering substantially the same ground. In the trial of the case the court in some instances admitted opinions on certain matters when offered by plaintiff and excluded them when offered by the defendant. We would not reverse the case on this ground. In view of a possible retrial of the case, we may suggest that the purpose of such testimony when offered by plaintiff was the same as when offered by the defendant, namely, to establish the fact situation in relation to the crops. There were no extraneous circumstances which prevented the rules of evidence from working the same way when invoked by either party.

III. Complaint is made by appellant that witnesses for plaintiff, who farmed in the vicinity of the plaintiff's land in 1931, were permitted to testify to the yields of their fields without showing the similarity of soil conditions in their fields and plaintiff's fields. In one instance at least the complaint is well founded. There is a great deal of difference in the productivity of land. Upon a retrial of the case such evidence should be confined to the yield of fields having substantially similar soil conditions.

IV. Under the terms of the policy loss was not payable until January 20, 1932. This action was begun on December 28, 1931. There is no question but what the action was prematurely brought. On May 16, 1932, an amended and substituted petition was filed in the case. The case came on for trial on September 12, 1932. The defendant asked that the jury be directed to return a verdict for the defendant because the action was prematurely brought. Such motion was overruled. As against this particular complaint the action of the trial court is sustained by Larsen &

Son v. Retail Merchants Mut. Ins. Co., 212 Iowa 943, 237 N. W. 468, Thompson v. Yousling, 196 Iowa 363, 192 N. W. 826, Keefer v. Valentine, 199 Iowa 1337, 203 N. W. 787, and other cases of this court.

V. At the April, 1932 term of court a trial was begun in the case. It appears that a mistrial was declared and the jury discharged because one or more of the jurors overheard arguments being made to the court in connection with the case. A motion to retax costs is now before the court. Consideration of it might well be delayed. But the motion involves only a retaxation of the costs occasioned by the first trial and an allowance of $600 to defendant for counsel fees for services in connection with the case rendered prior to the filing of the amended and substituted petition. So far as retaxation of costs are concerned, it must be noted that the mistrial did not result from misconduct chargeable to plaintiff, nor was it due to the fact that the action was prematurely brought. In this situation there is no reason why such costs should be taxed to the plaintiff. Such costs are an incident to the prosecution of the suit and will ultimately be chargeable to the losing party. The facts do not fairly bring the case within the rule announced in Thompson v. Yousling, 196 Iowa 363, 192 N. W. 826; Gribben v. Clement, 141 Iowa 144, 119 N. W. 596, 133 Am. St. Rep. 157, and Smith v. City of Davenport, 198 Iowa 1295, 201 N. W. 47, relating to taxation of costs and imposing conditions in actions prematurely begun.

Complaint is made of the failure of the court to condense the statement of the issues in submitting the case to the jury. The complaint is not lacking in merit. The case must be reversed in any event. In the event of a retrial we can only hope that the court will give heed to repeated warnings of this court upon the necessity for clear and concise statements of the issues. Complaint is made of other instructions given by the court. We do not approve the instructions of which complaint is made, but the instructions are not vulnerable to the attacks made upon them. Complaint is also made that an instructor in a high school was permitted to testify as an expert on the effect of hail on growing crops. The witness appears to have done little to qualify himself as an expert, and his answers indicate a very limited knowledge on the subject. His answers did not establish his competency to give opinion evidence, and objections to such evidence should have been sustained. In

view of the conclusions reached, we need not consider the objection that the verdict is excessive.

Upon the whole record we have reached the conclusion that the judgment of the trial court must be reversed.—Reversed.