Daniel Webster LUCAS et al.,
Plaintiffs-Appellants,

v.

PIONEER, INC., et al.,
Defendants-Appellees.

No. 2-57084.

Supreme Court of Iowa.

May 25, 1977.

Verne Lawyer of Lawyer, Lawyer, Dunn & Jackson, Des Moines, Dick R. Schlegel of Barnes, Schlegel & Walter, Ottumwa, and Edward J. Gallagher, Jr., of Keith, Gallagher, Lybbert, Martin & Burk, Waterloo, for appellants.

Paul F. Ahlers of Ahlers, Cooney, Dorweiler, Haynie & Smith, Des Moines, for appellees De Kalb Agricultural Ass'n, Inc. and De Kalb Agresearch, Inc.

Alexander, Speckman & Staples, Chicago, Ill., for appellee Pfister Hybrid Corn Co.

Alfred A. Beardmore, Charles City, for appellees Sar Seed Farms, Eno Seed Farm and Epley Brothers Hybrids.

M. Gene Blackburn of Mitchell, Murray, Blackburn & Coleman, P. C., Fort Dodge, for appellee Blackburn Hybrid Seed Corn.

Thomas N. Bolton, Des Moines, for appellees Piittman Seed Co., Malone Seed Co., Inc., Wespott Hybrid Seed Coop, Jacobsen Hybrid Corn Co., Inc. and Plumb Hybrid Corn Co.

M. H. Bordewick of Tobin, Bordewick, Fischer & Fischer, Vinton, for appellee Vinton Hybrid Corn Co.

Claus H. Bunz of Hansen, Bunz & Mugan, Manning, for appellees Renze Hybrids and Gruhn Hybrid Corn Co.

Gary L. Cameron of Parkin & Cameron, Fairfield, for appellee Middlekoop Seed Corn, Inc.

Casterline & Hamiel, Tipton, for appellee Holden's Hybrid Seed Farms.

Robert L. Claypool of Claypool & Claypool, Williamsburg, for appellee Holden's Foundation Seeds, Inc.

H. M. Coggeshall of Bradshaw, Fowler, Proctor & Fairgrave, Des Moines, for appellees Farmers Regional Cooperative, Farmland Industries, Inc., Lowe Seed Co. and Supergene Seeds, Inc.

Owen Cunningham, Des Moines, and A. C. Sidner of Sidner, Svoboda, Schilke, Wiseman & Thomsen, Fremont, Neb., for appellee Hoegemeyer Hybrids, Inc.

John W. Davison, River Falls, Wis., for appellee Jacques Seed Company, Inc.

William M. Deep of King, Deep & Branaman, Henderson, Ky., for appellee Stull Brothers, Inc.

Dorsey, Marquart, Windhorst, West & Halladay, Minneapolis, Minn., for appellees Northrup, King & Co. and Pride Corn, Inc.

Duncan, Jones, Riley & Finley, Des Moines, for appellees Asgrow Seed Co., Henry Field Seed & Nursery Co., and Blaney Farms, Inc.

James F. Fisch of Pryor, Riley, Jones & Walsh, Burlington, for appellee Merschman Seed & Fertilizer, Inc.

Robert T. Fleming of Fleming, Messman, Lapan & O'Connor, Bloomington, Ill., for appellee Gildersleeve Seed Co.

Gamble, Riepe, Webster & Fletcher, Des Moines, for appellee Tekseed Hybrid Co.

Rex B. Gilchrist, Ames, for appellee Ames Seed Farms, Inc.

Alan F. Glover of Denholm, Glover & Aho, Brookings, S.D., for appellee Sokota Hybrid Producers.

Marion Hirschburg, Ames, for appellees Pfister Hybrid Corn Co., Hobart Hybrid Seed Co., Mike Brayton Seeds, Inc., Burrus Brothers and Associate Growers, W. F. Renk & Sons Company, Inc., Curry Hybrid Seed Co. and Clyde Black & Sons, Inc.

Holleran, Shaw, Murphy & Stoutner, Clinton, for appellee Naeve Hybrid Corn Co.

John H. Holley of Holley & Nelson, Shell Rock, for appellee Epley Brothers Hybrids.

Alfred J. Hoffman, Columbia, Mo., for appellee MFA Seed Division (Missouri Farmers Ass'n, Inc.).

W. C. Hoffmann of Jones, Hoffmann & Davison, Des Moines, for appellees Trojan Seed Co., W. R. Grace & Co. and Jacques Seed Co.

Hopkins, Bump & Huebner, Des Moines, for appellees W. O. McCurdy & Sons, McCurdy Seed & Supply, McAllister Seed Farms and Edward J. Funk & Sons, Inc.

Clark C. King, Jr., of Lord, Bissell & Brook, Chicago, Ill., for appellees Anderson, Clayton & Co., Clyde Black & Son, Inc., Funk Bros. Seed Co., W. R. Grace & Co., The Moews Companies, J. C. Robinson Seed Co. and L. Teweles Seed Co.

Richard G. Langdon and Herschel G. Langdon of Herrick, Langdon, Belin, Harris, Langdon & Helmick, Des Moines, for appellees Crow's Hybrid Corn Co., Pfister Hybrid Corn Co., Gildersleeve Seed Co., Heneke Hybrid Corn Co., Cornelius Seed Corn Co., Anderson, Clayton & Co., Clyde Black & Son, Inc., Funk Bros. Seed Co., W. R. Grace & Co., The Moews Companies, J. C. Robinson Seed Co., L. Teweles Seed Co., Hobart Brothers Hybrid Seed Corn Co., Vinton Hybrid Corn Co., Naeve Hybrid Corn Co., Farmers Union Hybrids, Herman's Hybrids, Kussmaul Seed Co., Burrus Brothers & Associate Growers, W. F. Renk & Sons Co., Inc., Curry Hybrid Seed Co., Stull Brothers, Inc. and Wilson Hybrids, Inc.

Thomas A. Lawler of Klinkenborg, Lawler & Pepples, Parkersburg, for appellee O's Gold Seed Co.

Fred Louis, Jr., of Louis, Moore & Kohorst, Harlan, for appellee Wilson Hybrids, Inc.

Rande A. McAllister, Mount Pleasant, for appellees Merschman Seed & Fertilizer, Inc., Iowa-Missouri Hybrid Seed Corn Co., Isenhart Seed Co., Tweedy Hybrids and McAllister Seed Farms.

John A. McClintock of Hansen, Wheatcraft & McClintock, Des Moines, for appellees G. E. Hulting & Son, Inc., C. D. Ford & Sons, Inc., Sieben Hybrids and Edward J. Funk & Sons, Inc.

James M. McNally of McNally & George, LeMars, for appellee Joslin Seed Farm and William Joslin.

Clark D. Mantz of White & Mantz, Audubon, for appellee Clover Hill Hybrids.

Thomas H. Mohr, Des Moines, Jack W. Rogers and Clyde Putnam, Jr., Putnam, Putnam & Putnam, Des Moines, and Robert R. Dunlap of Dunlap, Keith, Collins, Towey, Finseth & Berndt, Rochester, Minn., for appellee Mallard Seed Co., Inc.

William Q. Norelius of Norelius & Norelius, Denison, for appellee Schoeppner Hybrids.

Waldine H. Olson of Schmid, Ford, Mooney, Frederick & Caporale, Omaha, Neb., for appellee Tekseed Hybrid Co.

Morgan J. Ordman of McBride, Baker, Wienke & Schlosser, Chicago, Ill., for appellee L. Teweles Seed Co.

Dale L. Porter of Hurlburt, Blanchard, Cless & Porter, Des Moines, for appellees Pioneer Hi-Bred International, Inc. and Pioneer Hi-Bred, Inc.

Frank N. Rasmussen of Rasmussen & Nelson, Exira, for appellee Littlefield Hybrids.

John E. Sebat of Sebat, Swanson, Banks, Lessen & Garman, Danville, Ill., for appellee Crow's Hybrid Corn Co.

Ross H. Sidney of Grefe & Sidney, Des Moines, for appellees W. Atlee Burpee Co., Farmers Hybrid Companies, Inc. and Cargill, Inc.

Joel E. Swanson, Lake City, for appellee Hobart Brothers Hybrid Seed Corn Co.

Thoma, Schoenthal, Davis, Hockenberg & Wine, Des Moines, for appellees Northrup, King & Co., Garst and Thomas Hybrid Seed Corn Co., May Seed & Nursery Co. and Pride Corn, Inc.

Thomasek & Vogel, Grinnell, for appellee Heneke Hybrid Corn Co.

L. R. Voigts of Nyemaster, Goode, McLaughlin, Emery & O'Brien, Des Moines, for appellees Coppock's Quality Hybrids and Iowa State Hybrid Corn Co.

William L. Welp of Mote, Wilson & Welp, Marshalltown, for appellee Lynk Bros. & Baird, Inc.

Ivan D. Wilson of Wilson & Irvin, Shenandoah, for appellee May Seed & Nursery Co.

REYNOLDSON, Justice.

This appeal arises out of a class action commenced by 19 farmers (now reduced to 18 in number) against 116 seed corn producers for damages caused by allegedly defective seed corn furnished by defendants in the 1970 crop year. Defendants' motion to drop parties because plaintiffs' complaints could not properly be maintained as a class action was sustained by trial court. We affirm in part, reverse in part, and remand with directions.

Plaintiffs' amended and substituted petition, filed March 5, 1973, was brought in their own behalf and as representatives of a class they designated "Farmers of Iowa," defined as owners or operators, or both, of Iowa farmland in the 1970 crop year who sustained losses from corn blight and other diseases as a result of the use of T-hybrid or T-cytoplasm seed corn. Three theories of recovery grounded in tort were pled in separate divisions.

Division One was based on strict liability in tort. Plaintiffs alleged defendants developed seed corn through a process utilizing the Texas male sterile corn plant selected because it "developed no pollen in its tassel and as a consequence, [it] could be used as a breeding plant without the necessity of detasseling." Plaintiffs alleged such hybrid seed corn was highly susceptible to disease, as defendants knew or in the exercise of reasonable care should have known. They asserted such seed was unreasonably dangerous to property of its users, they purchased the susceptible seed from defendants, the resulting corn was attacked by corn blight and other related diseases, and they suffered high crop losses.

In Division Two plaintiffs sought to recover on a negligence theory. They alleged defendants were negligent in failing to follow known procedures in production of disease-resistant hybrid seed corn, in relying almost exclusively on the susceptible seed, in failing to warn plaintiffs of the hazard, and in failing to instruct plaintiffs of practices which might mitigate the risk.

Division Three of plaintiffs' petition was based on strict liability in warranty, asserting the necessary allegations concerning defendants' knowledge of plaintiffs' intended uses and purposes for which the seed was purchased, defendants' holding out as possessing special skills, plaintiffs' reliance, an implied warranty of fitness, and defendants' breach of that warranty by selling seed corn which, in containing latent defects, was unfit for its intended use.

Service of original notices was followed by a blizzard of papers separately filed by defendants. Among these papers were a number of motions to drop parties. September 24, 1973, trial court ordered "all motions to drop parties on file shall come on for hearing as matters of law, and not evidentiary hearings, on the 15th day of November, 1973 at 9:00 A. M."

On the date this motion was argued, plaintiffs filed an amendment, allowed over defendants' objections, which identified the defendants from whom each named plaintiff purchased allegedly defective seed. The list made apparent there were a number of defendants who had made no sale to any of the named plaintiffs.

Trial court's November 28, 1973 ruling, relying on *Bennett v. Eldon Miller, Inc.*, 252 Iowa 76, 106 N.W.2d 257 (1960), held plaintiffs were not members of a group which could maintain a spurious class action under rule 42(c), Rules of Civil Procedure, because 1) each plaintiff had a "complete, speedy and adequate remedy at law," and 2) the amount which "might be recovered by any particular plaintiff would differ from amounts recovered by other plaintiffs so

that each plaintiff's case is different and the relief sought would vary." The court therefore sustained the motions, dropping all plaintiffs except the first named, Daniel Webster Lucas, and all defendants except Lowe Seed Company, alleged to be one of Lucas' suppliers. Rights of other plaintiffs to proceed separately "against any Defendant from which said Plaintiff purchased allegedly defective seed corn" were preserved.

Plaintiffs appealed from this ruling. In a preliminary skirmish here, several defendants filed motions to dismiss the appeal on the grounds trial court's ruling was interlocutory and plaintiffs failed to comply with our appellate rules. After en banc argument and submission, we overruled all such motions by order filed April 23, 1974.

Plaintiffs' appeal presents for review a number of issues. Defendants raise several grounds for affirmance which were properly preserved and which we shall consider even though defendants did not cross-appeal. See *In re Poulos' Estate*, 229 N.W.2d 721, 724–725 (Iowa 1975); *Deaver v. Armstrong Rubber Co.*, 170 N.W.2d 455, 465 (Iowa 1969). All these issues are subsumed under the broad question whether trial court's ruling on the motion to drop parties was correct. Those sufficiently meritorious are considered in the divisions which follow.

I. To place this appeal in proper perspective, it should first be noted this class action petition was filed pursuant to rule 42, R.C.P.:

### "RULE 42. CLASS ACTIONS

"If the persons composing a class are so numerous that it is impracticable to bring all before the court, such number of them as will insure adequate representation of all may sue or be sued on behalf of all, where the character of the right involved is:

"(a) Joint or common, or held primarily by one who has refused to enforce it, thereby entitling the class or its members to do so; or

"(b) Several, and the action seeks to adjudicate claims which do, or may, affect specific property; or

"(c) Several, and a common question of law or fact affects the several rights, and a common relief is sought."

This rule is substantially the same as former Federal Rule of Civil Procedure 23(a) which was in effect from 1938 to 1966. The rules committee comment states the adoption of our rule 42 was recommended to make available the federal precedents. See 1 Iowa Rules of Civil Procedure Annotated, Rule 42, at 241; *Bennett, supra*, 252 Iowa at 82, 106 N.W.2d at 260. Actions under R.C.P. 42(a) have become known as "true" class suits; under R.C.P. 42(b) as "hybrid" class suits; and under R.C.P. 42(c) as "spurious" class actions. *State ex rel. Turner v. Younker Brothers, Inc.*, 210 N.W.2d 550, 566–567 (Iowa 1973). "Spurious" has been defined, "[O]f illegitimate birth: bastard * * * outwardly similar or corresponding to something without having its genuine qualities * * *." Webster's Third New International Dictionary (1966).

Our decisions and federal cases under former federal rule 23(a) make it clear rule 42(c) actions conform to the dictionary definitions of "spurious": they are not true class actions, but are merely a permissive joinder device. *Younker Brothers, supra*, 210 N.W.2d at 566; *Riter v. Keokuk Electro-Metals Co.*, 248 Iowa 710, 714, 82 N.W.2d 151, 154 (1957); 2 Barron & Holtzoff, Federal Practice & Procedure § 562 (Wright ed. 1961). The allegation the suit is brought as a class action is merely an invitation to others in the class to intervene in the case. Rights of those not present are not bindingly adjudicated. *Riter, supra*, 248 Iowa at 715, 82 N.W.2d at 154; 59 Am.Jur.2d Parties § 58, at 429.

"There was no jural relationship between the members of the [spurious action] class; unlike, for example, the members of an unincorporated association, they had taken no steps to create a legal relationship among themselves. They were not fellow travelers by agreement. The right or liability of each was distinct. The class was formed solely by the presence of a common question of law or

fact."—3B Moore's Federal Practice § 23.10[1], at 23–2602, 23–2603 (2d ed. 1977).

It seems clear R.C.P. 42(c) spurious "class" actions were designed to provide an alternative to duplicative lawsuits involving a common question of law or fact but not arising out of the same "transaction, occurrence, or series of transactions or occurrences" so as to permit joinder under R.C.P. 23 or R.C.P. 24.

"In a spurious class suit the class extends only to plaintiffs who become actual parties to the action." 59 Am.Jur.2d Parties § 58, at 429. Under our rules interested parties are allowed to intervene "at any time before trial begins." R.C.P. 75. See *Cedar Rapids Community School District v. Parr,* 227 N.W.2d 486, 498–499 (Iowa 1975).

II. Against this backdrop, we first consider whether this appeal is or should be controlled by our holding in *Bennett,* supra, upon which trial court relied. The *Bennett* plaintiffs were truckers who contracted with defendant to transport commodities as independent contractors. They filed a petition in equity for declaratory judgment to declare void provisions in separate contracts for penalty bond or deposit, and prayed for an accounting. This court held the lower court should have sustained a motion to drop parties because 1) each plaintiff had a complete, speedy and adequate remedy at law, and 2) the R.C.P. 42(c)-required "common relief" was lacking because each plaintiff would be entitled to a different sum.

Turning to the first ground, the *Bennett* court provided no rationale to explain why a remedy at law would furnish a basis for denying a class action proceeding. Ordinarily "an error of the plaintiff as to the kind of proceedings adopted shall not cause the abatement or dismissal of the action, but merely a change into the proper proceedings, and a transfer to the proper docket." § 611.7, The Code; see *Riter v. Keokuk Electro-Metals Co.,* supra, 248 Iowa at 716, 82 N.W.2d at 155; *Corey v. Sherman,* 96 Iowa 114, 121–122, 64 N.W. 828, 831 (1895). Class actions commenced pursuant to R.C.P. 42 are not limited to law or to equity. See

59 Am.Jur.2d Parties § 49, at 412–413. In any event, the case before us was brought as a law action.

It seems more likely the *Bennett* court was indicating, as a ground for dismantling the class action, the claims of the plaintiffs were separate or several. But R.C.P. 42(c) requires the plaintiffs to have "*several rights.*" In division I we noted, "The right or liability of each was distinct." 3B Moore's Federal Practice § 23.10[1], at 23–2602. See *Pennsylvania Co. for Insurances v. Deckert,* 123 F.2d 979, 983 (3d Cir. 1941) ("If the rights of the individual plaintiffs are separate causes of action and they have no right to a common fund or to common property, the class action at bar is a 'spurious' one."); 3 Ohlinger's Federal Practice at 327 (1964) (the interests of the spurious class action parties are "separate and distinct").

Obviously, the claims of the plaintiffs in *Bennett* and in the case before us fall within the above definitions of "several rights." Each had a distinct cause of action for a separate loss. This circumstance furnished no basis for sustaining the motion to drop parties in *Bennett.* Neither does it furnish such a basis here.

Turning to the second ground, the *Bennett* court and the trial court in this case refused to permit a spurious class action because the required element of "common relief" was lacking, as each successful plaintiff would be entitled to a different amount.

In so holding in *Bennett,* this court relied on *Farmers Co-op Oil Co. v. Socony-Vacuum Oil Co.,* 133 F.2d 101 (8th Cir. 1942). In that case the circuit court noted the damages sought to be recovered by plaintiff and its several stockholders were different. The court therefore found no common relief was sought. *Id.* at 105.

While *Farmers Co-op* does support *Bennett,* the former has been severely criticized. See *Oppenheimer v. F. J. Young & Co.,* 144 F.2d 387, 390 (2d Cir. 1944) ("[I]f we were to read into the rule a requirement that each bondholder must recover damages

at the same rate as seems to have been done * * * in *Farmers Co-op Oil Co. v. Socony-Vacuum Oil Co.,* 133 F.2d 101, 105, there would be few situations to which the action would apply. Differences in the measure of damages were held not inconsistent with the requirement of 'common relief' in *Weeks v. Bareco Oil Co.,* 7 Cir., 125 F.2d 84, and in *Independence Shares Corp. v. Deckert,* 3 Cir., 108 F.2d 51, 55, reversed on other grounds in 311 U.S. 282, 61 S.Ct. 229, 85 L.Ed. 189."). To the same effect, see *Kainz v. Anheuser-Busch, Inc.,* 194 F.2d 737, 741 (7th Cir. 1952); *Puget Sound Alumni of Kappa Sigma v. City of Seattle,* 70 Wash.2d 222, 235, 422 P.2d 799, 807 (1967); *Rath v. Armour and Company,* 136 N.W.2d 142, 150 (N.D.1965).

The *Farmers Co-op* analysis was rejected in *Weeks v. Bareco Oil Co.,* 125 F.2d 84, 88 (7th Cir. 1941) ("The same relief, namely damages, is sought, although the amount of recovery varies") and in 3B Moore's Federal Practice § 23.10[6], at 23–2721, where the author defines "common relief" to mean:

"[T]hat all of the members of the class must have been seeking or have been entitled to the same kind of relief, i. e., injunctive relief, damages, appointment of a receiver, etc.; one member of the class could not seek damages, another specific performance, another injunctive relief. It does not mean, as the Eighth Circuit assumed in one case, that a spurious class action could not be maintained where each member of the class would be entitled to his individual damages. Such a holding would in effect have restricted the spurious class action to cases involving equitable relief. Other circuit and district courts adopted the more appropriate view that 'Common relief may be sought despite the fact that individuals may recover separate judgments different in amounts.' "

Another careful analysis of the "common relief" requirement is found in *Kainz v. Anheuser-Busch, Inc., supra,* 194 F.2d at 743:

"Obviously, the phrase 'common relief,' as used in the rule, was not intended to mean joint relief, for the expressed purpose is to permit joinder of parties who have several or separable causes of action. Hence to say that 'common' means 'joint' is to defeat the very purpose of the rule. 'Common relief' for persons having separate causes of action who may recover only several judgments, it seems to us, must mean, in order to give life to the purpose of the rule, relief emanating from the same original source, either by way of grant, contract, tort or statute, where the claims of all beneficiaries flow from the same fountain but are allowed not in a joint judgment but in several judgments. Strictly speaking, this may not be common relief in many senses, but it is separate relief for each growing out of a common source of right to recover. The same character of right to recover exists in several; in that sense, when there are common issues of fact and law, we think, the relief is common within the meaning of the rule."

Thus in the case before us the fact each plaintiff might be entitled to a different sum in money damages would not, under the better reasoned authorities above cited, furnish a basis for denying the class action by sustaining the motion to drop parties.

We are convinced the *Bennett* rationale has not passed time's test. To the extent *Bennett* is inconsistent with the authorities above cited, it is overruled. It follows that although trial court understandably applied our prior decision, its ruling cannot be sustained on those grounds.

III. We therefore expand our study to determine if, under the issues presented here, trial court's ruling should be supported on other grounds.

A. Of course this examination must be pursued in light of the purposes of R.C.P. 42, the rules governing its interpretation, the alternatives presented to trial court, and our scope of review.

■ The basic thought behind the class action was that it would avoid a multiplicity of suits. *Kainz v. Anheuser-Busch, Inc., supra,* 194 F.2d at 740.

"To permit the defendants to contest liability with each claimant in a single, separate suit, would, in many cases give defendants an advantage which would be almost equivalent to closing the door of justice to all small claimants. This is what we think the class suit practice was to prevent. Like many another practice, necessity was its mother."—*Weeks v. Bareco Oil Co.,* supra, 125 F.2d at 90.

On the other hand, there are also advantages to a class action defendant in avoiding a dissipation of defensive efforts and costs in numerous venue jurisdictions before various judges unfamiliar with the common issues of law and fact. See *Union Carbide and Carbon Corporation v. Nisley,* 300 F.2d 561, 570 (10th Cir. 1961); *Weeks v. Bareco Oil Co.,* supra, 125 F.2d at 90. Although difficulties may often be encountered in meeting varying questions of law and fact applicable to individual members of the class, these may decrease in significance when compared to the difficulties and circumstances that may result from a number of actions brought in the various counties of the state involving the same issues. *Klicker v. State,* 293 Minn. 149, 154, 197 N.W.2d 434, 437 (1972).

Neither should we ignore the diminished court congestion which might result from processing common issues of law and fact in one, rather than many, forums. "The spurious class action Rule is based on the assumption that the economy of time, effort, and expense which will result from a common trial of substantial common issues involving rights several in character exceeds the additional burden which may be imposed upon the court and the parties by the necessity of also determining in the common litigation those issues which may be several." 59 Am.Jur.2d Parties § 50, at 413–414.

█ While this court has never indicated the manner in which R.C.P. 42 should be construed and applied, there are plain guideposts at hand. Rule 42(c) is closely related to R.C.P. 75, governing interventions. We have said, "R.C.P. 75 is remedial and should be liberally construed to reduce

litigation and expeditiously determine matters before the court." *Schimerowski v. Iowa Beef Packers, Inc.,* 196 N.W.2d 551, 555 (Iowa 1972). A second indicia is found in § 4.2, The Code, where the legislature provided the Code's "provisions and all proceedings under it shall be liberally construed with a view to promote its objects and assist the parties in obtaining justice." Finally, we are convinced the appropriate view is that adopted by federal courts in applying former federal rule 23. Those courts consistently held the rule should be liberally construed and the policy should favor maintenance of class actions. *McGrath v. Tadayasu Abo,* 186 F.2d 766, 770 (9th Cir. 1951), cert. denied, 342 U.S. 832, 72 S.Ct. 38, 96 L.Ed. 629; *Montgomery Ward & Co. v. Langer,* 168 F.2d 182, 187 (8th Cir. 1948); *Weeks v. Bareco Oil Co.,* supra, 125 F.2d at 88; 3B Moore's Federal Practice § 23.02[4], at 23–81.

Given the above policy, it is important to note the manner in which the crucial question was reached below. A class action was denied through the device of a motion to drop parties. The pertinent rule provides:

"27. *Remedy for misjoinder*

"(a) *Parties.* Misjoinder of parties is no ground for dismissal of the action, but parties may be dropped by order of the court on its own motion or that of any party at any stage of the action, on such terms as are just, *or any claim against a party improperly joined may be severed and proceeded with separately.*

"(b) * * *." (emphasis supplied)

█ Under the former practice, a misjoinder of parties was ground for a demurrer or dismissal. *McPherson v. Commercial Building & Sec. Co.,* 206 Iowa 562, 566, 218 N.W. 306, 308 (1928); see comment, 1 Iowa Rules of Civil Procedure Annotated, Rule 27 at 176. Misjoinder is no longer a ground for dismissal. *Claeys v. Moldenschardt,* 169 N.W.2d 885, 889 (Iowa 1969); *Appanoose Co. R. Tax Assoc. v. Iowa State Tax Com'n,* 261 Iowa 1191, 1197, 158 N.W.2d 176, 179–180 (1968). We note R.C.P. 27(a) significantly offers trial court the alternative of severing claims against parties improperly

joined, instead of dropping parties, so that those claims can be separately processed.

■ B. We think the applicable standard recognizes a rule 27(a) motion is addressed to the sound discretion of trial court. See *City of Cedar Rapids v. Cox,* 250 Iowa 457, 469, 93 N.W.2d 216, 223 (1958); *Blades v. Walker,* 36 Iowa 266, 267–268 (1873). An analogous approach is taken by the federal courts with respect to motions under similar federal rule 21. See *United States v. Wyoming Nat'l Bank of Casper,* 505 F.2d 1064, 1067 (10th Cir. 1974); 3A Moore's Federal Practice § 21.03[1], at 21.10 (1974).

We thus examine trial court's ruling to determine whether it exceeded its discretion in dropping all parties except one plaintiff and one defendant. It is of course apparent trial court gave little, if any, consideration to the alternative of severing claims rather than dropping parties because our *Bennett* holding, overruled above, was so obviously applicable.

■ We may summarily dispose of the issue relating to defendant seed companies which sold no seed corn to any of the named plaintiffs. None of the named plaintiffs could "insure adequate representation" (R.C.P. 42) of unnamed members of the class who allegedly did purchase from those seed suppliers. Our count discloses these named plaintiffs purchased seed corn from only 13 of the 116 defendant seed corn producers. All except those the amended petition alleges sold seed to these plaintiffs should be dropped, and to that extent trial court's ruling should be affirmed.

■ We next turn to the remaining parties. After giving careful attention to all of the relevant papers and briefs, together with the transcript of the hearing below, it is apparent those five plaintiffs who purchased seed from defendant Pioneer Hi-Bred International, Inc., for example, had and pled a viable spurious class action against that defendant. The same is true of those five plaintiffs who purchased seed from defendant De Kalb Agresearch, Inc., and other plaintiffs, properly grouped, who purchased from each supplier.

Viewed as severed spurious class actions against separate defendants, the evils projected by defendants dissipate. The same evidence could disclose defendant's manner of hybrid seed development, production, testing and marketing. Plaintiffs who purchased from that defendant would all be horizontally related as purchasers from a single supplier. If, as contended by defendants, each defendant has different advertising, warranties and disclaimers, a severance of the claims against each remaining defendant would enhance the common features of the litigation.

We see little difference between such a severed action and Professor Moore's classic spurious class action example in which "a railroad negligently sets fire to property, and widespread damage to many property owners ensues. Here there is a question of law and fact common to many persons. A, B, and C could bring an action on behalf of themselves, and all others similarly situated, against the railroad. * * * Other persons who had been injured could intervene * * *." 3B Moore's Federal Practice § 23.10[1], at 23–2604, 23–2605. See *Puget Sound Alumni of Kappa Sigma v. City of Seattle,* supra, 70 Wash.2d at 234–235, 422 P.2d at 806–807.

Properly severed as a separate spurious class action against each seed-supplying defendant, it is clear each resulting action would involve substantial common questions of law and fact. The common question of law would be whether defendant is liable to its customer plaintiffs under any of the three theories set out in the petition. The basic common question of fact would be whether the hybrid seed corn produced and sold by the defendant was unreasonably susceptible to disease. The requirement of R.C.P. 42(c) would thus be met. The remaining requirements of "several rights" and "common relief" would also be met as indicated in division II.

In view of the policy we adopt, supra, favoring in appropriate cases the maintenance of class actions, we hold in this case trial court's ruling which dropped all parties

except one plaintiff and one defendant exceeded its discretion. The result, although understandable because of the court's reliance on *Bennett,* was analogous to wielding an axe when a scalpel would have been the appropriate tool. The proper disposition would retain all plaintiffs and all defendants who sold seed corn to the named plaintiffs. The claims against each defendant should have been severed and ordered recast to provide one spurious class action against each defendant, pursuant to the R.C.P. 27(a) alternative that a claim against "a party improperly joined may be severed and proceeded with separately."

IV. In so holding, we have considered the various issues defendants raise, several of which will be referred to in this division.

 A. Defendants assert this court is without jurisdiction to hear this appeal because constitutional notice requirements to all members of the class have not been met, citing *Eisen v. Carlisle & Jacquelin,* 417 U.S. 156, 94 S.Ct. 2140, 40 L.Ed.2d 732 (1974). They contend "it is a constitutional requirement that notice be given to all members of a purported class so that they may join in the action."

We are not persuaded *Eisen* is applicable to a R.C.P. 42(c) spurious class action. The *Eisen* case was decided under the new federal class action rule 23(b)(3), Federal Rules of Civil Procedure, which results in a binding judgment on all class members (present *or* absent) who after notice do not request exclusion from the class. The *Eisen* court enforced the provisions of federal rule 23(c)(2) which required "the best notice practicable under the circumstances, including individual notice to all members who can be identified through reasonable effort." Due process required notice "reasonably certain to inform those *affected.*" *Eisen,* supra, 417 U.S. at 174, 94 S.Ct. at 2151, 40 L.Ed.2d at 747; see *Hansberry v. Lee,* 311 U.S. 32, 42, 61 S.Ct. 115, 118, 85 L.Ed. 22, 27 (1940); *Larionoff v. United States,* 175 U.S.App.D.C. 32, 533 F.2d 1167, 1186 (1976).

Defendants overlook the crucial feature of Iowa's class action, which, as we have noted above, binds no one not a party or intervenor. See 1 Vestal & Willson, Iowa Practice § 22.09(4), at 426 (1974). The circumstances which required notice to absent class members in *Eisen* (who would be bound by the outcome) are absent in the case before us. There was no lack of jurisdiction on this ground, either below or here.

B. Defendants also assert this court has no jurisdiction to remand to allow plaintiffs to amend their petition, a course plaintiffs' brief suggests would be desirable.

 Of course where, as here, the appeal is in a law action our appellate jurisdiction is not *de novo* but is confined to correction of errors assigned. *Winter v. Honeggers' & Co., Inc.,* 215 N.W.2d 316, 320 (Iowa 1974); see R.C.P. 334. We cannot hold there was any error at law in not permitting plaintiffs to amend, because they sought no permission to amend in trial court. Nor will this court allow parties to attempt to amend pleadings on appeal. See *Lungren v. Lungren,* 197 Iowa 519, 520, 197 N.W. 646 (1924); *Decatur v. Simpson,* 115 Iowa 348, 351, 88 N.W. 839, 840 (1962).

However, we do not consider this issue controlling in this appeal. We have already held plaintiffs pled a sustainable spurious class action, although there was a misjoinder of parties. When the claims of those plaintiffs who purchased seed from each remaining defendant are properly severed, the petition will necessarily be recast into separate actions to reflect the appropriate parties and plaintiff classes. See R.C.P. 81 (correcting or recasting pleadings). At that point the technical (but nonfatal) defects defendants complain of can be obviated.

██ C. Defendants' briefs devote several pages urging the court to take judicial notice that soil, weather and other conditions affecting corn production vary widely in Iowa. We think these matters may be judicially noted, as well as the fact there was widespread damage from southern cornleaf blight in 1970. See, e. g., *Grimes v. Polk County,* 240 Iowa 228, 237–238, 34 N.W.2d 767, 772 (1949); *Slinger v. Farmers' Mutual Hail Ins. Ass'n,* 219 Iowa 329, 331,

258 N.W. 101, 102 (1934); *Boyd v. City of Oskaloosa,* 179 Iowa 387, 396, 161 N.W. 491, 493–494 (1917); 31 C.J.S. Evidence § 9, at 824 (1964); 1 Jones on Evidence § 2:40; at 116–117 (S. Gard 6th ed. 1972).

The statement in *Bennett,* 252 Iowa at 83, 106 N.W.2d at 260, that "[o]n the present state of the record, we are restricted to the pleadings alone" in ruling whether a class action is properly pled, may have been made because nothing else was before the court. Other courts differ on whether materials beyond the pleadings may be considered. Compare *United States v. Preston,* 352 F.2d 352, 356 n. 10 (9th Cir. 1965), with *Hyatt v. United Aircraft Corporation, Sikorsky Aircraft Division,* 50 F.R.D. 242 (D.Conn.1970) and *Oppenheimer v. F. J. Young & Co.,* 3 F.R.D. 220, 225 (S.D.N.Y. 1943). We agree with the statement in 7A Wright & Miller, Federal Practice and Procedure § 1785, at 131 (1972), that "[t]he determination [of whether the suit is maintainable as a class action] usually should be predicated on more information than the complaint itself affords." This does not mean trial court is required to hold an evidentiary hearing. But trial court is not obligated to ignore affidavits, briefs and other papers filed, nor facts it might judicially notice.

In the final analysis, however, defendants are merely asserting that these differences in corn growing conditions among the plaintiffs demonstrate an absence of "common relief," or in any event, with such divergent situations it cannot be said that common fact questions predominate.

We have already observed in division II plaintiffs may seek "common relief"—in this case damages—despite the fact each is entitled to separate and different amounts.

Defendants cite recent federal cases in support of their assertion the questions of law or fact common to the class members must predominate over any questions affecting only individual members. See *Kline v. Coldwell, Banker & Co.,* 508 F.2d 226 (9th Cir. 1974). But these cases are not applicable here because they rely on new federal rule 23(b)(3) which among other things provides a class action can be brought only if "the court finds that the questions of law or fact common to the members of the class *predominate* over any questions affecting only individual members * * *."

There is no similar provision in R.C.P. 42. Of course, existence of insignificant or trivial common questions should not satisfy the requirement of rule 42(c). The common questions of law or fact must be *substantial. Harris v. Palm Springs Alpine Estates, Inc.,* 329 F.2d 909, 914 (9th Cir. 1964); see 3B Moore's Federal Practice § 23.10[5], at 23–2703.

In this case plaintiffs were by pleaded definition those farm owners or operators who suffered losses from corn blight and diseases resulting from the T-hybrid or T-cytoplasm seed corn developed by defendants, which seed was alleged to be "highly and unusually susceptible to disease, including corn blight." We consider this a pleading of a substantial common question of fact.

It is likely, as defendants argue, other fact issues may be involved in assessing the damages of each plaintiff or intervenor. "But that possibility does not authorize us so to interpret the [class action] rules as to nullify them." *Kainz v. Anheuser-Busch, Inc.,* supra, 194 F.2d at 744.

These factors may be considered by a trial court when the class action nature of the litigation is under attack. But we do not conceive trial court, exercising a sound discretion, could abort the class-action nature of this litigation on those considerations. To so hold would be to ignore the essential flexibility of our rules and the innovative skills of our trial courts. See R.C.P. 81 (correcting and recasting of pleadings); R.C.P. 185 (consolidation); R.C.P. 186 (separate trials); R.C.P. 205 (special verdicts); R.C.P. 206 (interrogatories).

D. Defendants argue the petition before us contains several pleading defects. Assuming these may properly be raised by a motion to drop parties, we deem none of them fatal.

Plaintiffs alleged they were bringing the action "against the defendants and each and all of them jointly and severally." They seek an aggregate sum of money ($100,000,000) "against each * * * and against all" of the defendants.

The alternative theory of joint recovery seems inconsistent with the R.C.P. 42(c) requirement that the rights involved be "several." But the facts alleged in the petition disclose the rights are in fact several, not joint. In this connection, we relevantly said in *Hollenbeck v. Ristine,* 105 Iowa 488, 491, 75 N.W. 355, 356 (1898), "The name that plaintiff has given his action is of no consequence, provided he has stated sufficient facts to show a right of recovery." In our view, the allegations relating to "joint" liability are surplusage which, for the purposes of this appeal, may be ignored. See *Cavanaugh v. Jepson,* 167 N.W.2d 616, 620 (Iowa 1969); *Van Tiger v. Hendricks,* 249 Iowa 25, 28, 85 N.W.2d 543, 544 (1957); *Bristow v. Pagano,* 238 Iowa 1075, 1078, 29 N.W.2d 423, 425 (1947).

Defendants argue plaintiffs' prayer for an aggregate sum of money against "each * * * and against all" of the defendants omits an essential allegation of the petition and would unconstitutionally violate the substantive property rights of the defendants. It is apparent plaintiffs envisioned a fluid class recovery fund, a procedure proposed by the trial court in *Eisen v. Carlisle & Jacquelin,* 52 F.R.D. 253, 264 (S.D.N.Y. 1971), rev'd, 479 F.2d 1005 (2d Cir. 1973), aff'd, 417 U.S. 156, 94 S.Ct. 2140, 40 L.Ed.2d 732 (1974). See Note, 60 Iowa L.Rev. 93, 121 (1974). Such a procedure is unavailable under our present rules.

Whether or not plaintiffs, after stating an aggregate damage amount, are required to specifically state in their petition the amount each has been damaged where such information otherwise appears has not always been clear. Compare *Hess v. Anderson, Clayton & Co.,* 20 F.R.D. 466, 477–478 (S.D.Cal.1957) with *Rath v. Armour and Company,* supra, 136 N.W.2d at 145–150, 152. What we have already said concerning "joint" liability, coupled with our rules, im-

pels us to the conclusion the separate damage claims of the plaintiffs, and subsequently the intervenors, should be pled.

At the time of ruling below, R.C.P. 70 provided, "The petition shall state whether it is at law or in equity, the facts concerning the cause or causes of action asserted, the relief demanded and, if for money, the amount thereof." Plaintiffs did state a total amount of the money relief demanded. Assuming a proper motion was made, failure to satisfy R.C.P. 70 requirements does not automatically result in a dismissal. For example, an error in labeling the action as law or equity has no significance. See § 611.7, The Code; 1 Vestal & Willson, Iowa Practice § 13.51(1), at 272–273 (1974). Ordinarily a statement in the prayer of a petition is not an allegation of a cause of action. See *Tacke v. Hauser,* 247 Iowa 465, 470, 74 N.W.2d 219, 222 (1956); *Baker v. Baker,* 220 Iowa 1216, 1220, 264 N.W. 116, 119 (1935); 71 C.J.S. Pleading § 95(b), at 239 (1951).

We hold the pleading defects, which may be easily remedied when the claims are severed, furnish no ground for sustaining trial court's action.

E. We have studied the other arguments raised by the various defendants. Most, if not all, are treated directly or indirectly in the above discussion. Under the disposition we make of this appeal, they furnish no basis for affirming the ruling below.

■ V. Following remand, another question will inevitably arise which in fairness to the parties should be answered now. The alleged damages occurred in 1970. Other farm owners and operators who claim loss may wish to intervene in the spurious class actions resulting from the severed claims. Should parties be permitted to intervene as members of a "spurious" class after the termination of a limitation period, when the initial class action complaint has been filed before the applicable statute of limitations period has run?

Apparently this is a question of first impression in Iowa. In our view, this appeal

presented a misjoinder of parties, not a failure of action within the meaning of § 614.10, The Code. If applicable, that statute would have stayed the operation of limitation statutes upon plaintiffs' filing new actions within six months after failure of the prior action.

We have said that courts do not look with favor upon a defense of statute of limitations. *Johnson v. Brooks,* 254 Iowa 278, 281, 117 N.W.2d 457, 459 (1962). Such statutes are said to be a penalty for laches and protection against stale claims. *Higbee v. Walsh,* 229 Iowa 408, 421, 294 N.W. 597, 604 (1940). The United States Supreme Court has observed limitation statutes are "designed to promote justice by preventing surprises through the revival of claims that have been allowed to slumber until evidence has been lost, memories have faded and witnesses have disappeared. * * * [E]ven if one has a just claim it is unjust not to put the adversary on notice to defend within the period of limitation * * *." *Order of R.R. Telegraphers v. Railway Express Agency, Inc.,* 321 U.S. 342, 348–349, 64 S.Ct. 582, 586, 88 L.Ed. 788, 792 (1944).

In the case before us, it cannot be said the petition filed did not timely inform defendants of the nature of the claims held by the class members or the dimensions of the alleged loss. All of the purposes behind the limitation statutes were satisfied.

We have also examined those federal decisions which resolved this issue under the similar provisions of old federal rule 23. The great majority hold if a class action is maintainable as such, it would be incongruous to say that absent members who are represented by those present may not rely upon the commencement of the action by their fellow class members to toll the running of the statute. *Escott v. Barchris Construction Corporation,* 340 F.2d 731, 733 (2d Cir. 1965); *DePinto v. Provident Security Life Insurance Company,* 323 F.2d 826, 831 (9th Cir. 1963); *Union Carbide and Carbon Corporation v. Nisley,* 300 F.2d 561, 589–590 (10th Cir. 1961); *York v. Guaranty Trust Co. of New York,* 143 F.2d 503, 529 (2d Cir. 1944); see *American Pipe and Construction Co. v. Utah,* 414 U.S. 538, 549, 94 S.Ct. 756, 764, 38 L.Ed.2d 713, 724 (1974); *Echols v. Star Loan Co.,* 290 Ala. 76, 274 So.2d 51, 60 (1973); 3B Moore's Federal Practice § 23.12, at 23–2918, 23–2919.

We hold claims of parties properly members of the class, who timely intervene in the proceedings below (see R.C.P. 75), shall be deemed brought, for limitation purposes, when the appropriate defendant was legally served in the original litigation. See R.C.P. 49, The Code, 1973.

VI. The court has observed a wide divergence in the printing costs for various papers filed in this appeal. Cost of printing the appendix was $11.25 per page; plaintiffs' brief, $10.20 per page; brief for defendants Garst, Northrup and May, $2.50 per page. Our rule 344.2(c) provides only for taxation of reasonable printing costs. See *Jasper v. Chicago Great Western Railway Co.,* 248 Iowa 1286, 1299, 84 N.W.2d 21, 29 (1957). In 1974, we limited taxable printing costs to $2.00 per page. Annual cost of living increases since those briefs were printed (which we assume are reflected in costs of printing operations) total at a minimum 25.7 percent (1974 through 1976). We limit the taxable printing costs in this appeal and future appeals to actual cost not to exceed $3.00.

We affirm in part, reverse in part, and remand for entry of ruling in conformance herewith. Taxable costs of appeal for all appellee defendants who no longer remain in this litigation are taxed to the plaintiffs. Appeal costs of the remaining parties shall be equitably apportioned by trial court among the severed proceedings and shall be ultimately taxed to the unsuccessful party or parties.

AFFIRMED IN PART, REVERSED IN PART AND REMANDED WITH DIRECTIONS.

All Justices concur except REES and Le-GRAND, JJ., who concur in result but dissent to Division V.

REES, Justice (dissenting in part, concurring in part and in result).

I cannot agree with the conclusion and holding in Division V of the majority opinion that claims of parties properly members of the class who "timely intervene in the proceedings below" in accordance with Rule 75, Rules of Civil Procedure, shall be deemed brought, for limitation purposes, when the appropriate defendant was legally served in the original litigation.

I agree with the majority that this is a question of first impression in Iowa. I might also observe the limitation question was not presented in this appeal and was accordingly not briefed or argued by the parties.

The holding of the majority in Division V offends my sense of justice and fair play. The actions accrued in 1970, and the suit which eventuated in this appeal was instituted in 1973.

The primary purpose of a statute of limitations is to compel the exercise of a right of action within a reasonable time so that the opposing party has a fair opportunity to defend. Statutes of limitation are founded upon the general experience of mankind that claims which are valid are not usually permitted to remain neglected if the right to sue thereon exists. 51 Am.Jur.2d, Limitations of Actions, § 17, p. 602.

If we are to proceed to the disposition of this question in this appeal, I would hold that in a class action of the character of the case before us an interested party has an absolute right to come in and be joined as a party plaintiff only so long as his claim is valid and enforceable by an independent suit. If the holding of the majority is to prevail a potential plaintiff could be admitted as a party many years hence, if the suit were then pending. We must not, in my judgment, establish that doctrine. See *MacArdell v. Olcott* (Appeal of Sillcocks), 62 App.Div. 127, 70 N.Y.S. 930 (1901). See also 13 Villanova Law Rev. 370, 378, 388, 392.

I adhere to the view that statutes of limitation are statutes of repose, based on the proposition that persons who sleep on their rights may lose them, and are designed to compel the exercise of a right of action within a reasonable time, and to suppress stale claims. I am prepared to concede that the policy of repose expressed in statutes of limitation may, and should be, outweighed if the interests of justice require vindication of a plaintiff's rights where a plaintiff has not been dilatory in asserting his rights or has for some reason been prevented from asserting them. I do not perceive such a factual situation here, and in any event to permit wholesale joinders in this case after the rights accrued seven years since, and, but for the holding of the majority, would have been long since barred by existing statutes of limitation is, in my view, fundamentally unfair. Section 51 Am.Jur.2d, Limitation of Actions, § 16, p. 601 (and citations).

I would not permit intervention in this case by parties whose rights accrued in 1970, as did the rights of the named plaintiffs.

I therefore concur in the result and in all of the divisions of the opinion except Division V from which I dissent.

LeGRAND, J., joins in dissenting in part, concurring in part and in result.